JOHN ANDERSON, Appellant, *v.* JOHN L. HAYES CON-
STRUCTION COMPANY, INC., et al., Appellants, and the
PEOPLE OF THE STATE OF NEW YORK, Respondent.

**Liens — State — contract — jurisdiction — Supreme Court
has jurisdiction to determine the sum due from State on
contract chargeable with liens and to direct payment there-
from to the lienors — assignee of moneys due on contract
with State on a parity with lienors in respect to remedies —
non-payment by county of drafts for work done on contract
to build highway sufficient reason for rescission where the
State had covenanted to pay — validity of liens not affected by
their exceeding in amount moneys in treasury appropriated
to contract.**

1. By section 42 of the Lien Law (Cons. Laws, ch. 33) the State
has consented to be sued in the ordinary courts of justice when the
subject-matter of the controversy is a lien upon money owing to its
contractor, and by section 60 of that law it has consented that out of
any money that may be found to be so owing, judgment may be ren-
dered directing payment to be made. There is no suggestion of a
condition that the remedy is to fail if the debt shall be disputed. A
contention, therefore, that the Supreme Court is without jurisdiction
to adjudge the payment of such a lien unless there is a concession by
the State of money due to the contractor cannot be sustained. There
is jurisdiction to determine the sum chargeable with liens and to
direct payment to the lienors out of the balance so adjudged.

2. An assignee of moneys due under a contract for a public improve-
ment, when brought into court at the suit of lienors, is on a parity
with them in respect of the remedies available. By section 16 of
the Lien Law the assignment takes precedence of liens subsequently
filed, and the provision of section 42 that the lien against the State
shall be enforced by a civil action in the same manner as mechanics'
liens generally means that there shall be such cross-remedies among
defendants claiming derivative interests in the fund by succession to
the contractor, as may be necessary for complete relief.

3. In an action to foreclose a mechanic's lien for labor furnished to
the contractor in the building of a highway, which contract had been
declared broken by the State by reason of failure of the contractor to
go on with the work after refusal by a county treasurer to pay drafts
for installments due for work done, a contention that non-payment of
the drafts was not an adequate reason for rescission and that the

·contractor was at fault in abandoning the work cannot be upheld, where, though the statute made it the duty of the county to contribute a prescribed quota of the cost, as between the parties to the contract, the obligation to pay at the times and in the amounts agreed was that of the State, and when informed that the drafts had been dishonored it did not offer to make them good. A theory that because in the end there would be remedies available to hold the county to its duty, the contractor must wait for its money and while waiting perform is not a fair construction of the contract or of the obligation of the State thereunder. The State had covenanted to pay. If payment was not made the covenant was broken and if the breach was not repaired the contractor might rescind.

4. The validity of the liens is not affected by the fact that the aggregate award therefor may be in excess of the moneys in the treasury of the State appropriated to the contract. The validity of a judgment is not dependent upon the assurance of collection and the liens upon the cause of action do not fail because the State has lost or wasted or been unable to collect the fund to which it expected to resort for payment of the debt. The liens attach to the debt and the lienors to the extent of their interests are statutory assignees.

*Anderson* v. *Hayes Construction Co.*, 215 App. Div. 109, reversed.

(Argued June 1, 1926; decided July 9, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 9, 1926, modifying and affirming as modified a judgment entered upon a decision of the court on trial at Special Term in an action to foreclose a mechanic's lien.

*William H. Sweny* for plaintiff, appellant. Failure to pay an installment upon a contract when due is a breach for which the contractor has two remedies. He may elect to rescind and recover on a *quantum meruit* or he may continue under the contract and sue for the installment due. (*Wharton* v. *Winch*, 140 N. Y. 287.) The State of New York having illegally canceled the contract herein the contractor is entitled to the value of the work performed and materials furnished, and under the Lien Law the court can appropriate so much thereof as will

pay all valid liens. (*Smith* v. *State of New York*, 65 Misc. Rep. 376; *Newman Lumber Co.* v. *Wemple*, 56 Misc. Rep. 168.)

*I. J. Beaudrias* for Westchester County Trust Company, defendant, appellant. The contract provides for payment in installments, and a failure to pay such installments when due is a breach for which the contractor may at once rescind and recover for the materials furnished and services rendered up to that time. (*Wharton* v. *Winch*, 140 N. Y. 387; *Jones* v. *City of New York*, 47 App. Div. 40.) The lienors are entitled to have all moneys due from the State of New York to the contractor or which become due thereafter applied in satisfaction of their liens. (*Upton Co.* v. *Flynn*, 169 App. Div. 79; *Foshay* v. *Robinson*, 137 N. Y. 134; *Van Clief* v. *Van Vechten*, 130 N. Y. 571; *Anisansee* v. *Coggeshall*, 83 App. Div. 491; *Riverside Contracting Co.* v. *City of New York*, 148 N. Y. Supp. 281; 165 App. Div. 972; 218 N. Y. 596; *McCabe* v. *City of New York*, 46 App. Div. 579; *Post & McCord* v. *City of New York*, 148 N. Y. Supp. 568; *Herman* v. *Hillman*, 203 N. Y. 435.) The court may award a judgment to the lienors for the extent of the money earned by the contractor, although it may not in this action adjudicate the amount due the contractor over and above the amount of such liens. (*Smith* v. *State of New York*, 65 Misc. Rep. 376; *Newman Lumber Co.* v. *Wemple*, 56 Misc. Rep. 168.) The court has jurisdiction to render judgment as between the lienors and the contractor, determining the validity and priority of liens and directing payment thereof out of moneys conceded by the State to be due to the contractor and in its possession. (*Riverside Contracting Co.* v. *City of New York*, 148 N. Y. Supp. 281; 165 App. Div. 972; 218 N. Y. 596; *McCabe* v. *City of New York*, 46 App. Div. 579; *Post & McCord* v. *City of New York*, 148 N. Y. Supp. 568; *Herman* v. *Hillman*, 203 N. Y. 435.)

*Joseph A. Murphy* for Acme Cement Corporation, defendant, appellant. Issues arising between a lienor and the State may be tried and determined in a lien foreclosure. (*Stief* v. *Hart,* 1 N. Y. 30; *Mayor of N. Y.* v. *Sands,* 105 N. Y. 210; *People ex rel. Ostrander* v. *Chapin,* 105 N. Y. 309; *Smith* v. *State,* 65 Misc. Rep. 376.) Liens attach to moneys due and payable under the contract and the right of a lienor to such money is superior to the right of the State. (*Van Clief* v. *Van Vechten,* 130 N. Y. 571; *Dempsey* v. *Mount Sinai Hospital,* 186 App. Div. 334; *Wharton* v. *Winch,* 140 N. Y. 287; *Kertscher & Co.* v. *Green,* 205 N. Y. 522; *Brainard* v. *County of Kings,* 155 N. Y. 538; *Brandt* v. *City of New York,* 110 App. Div. 396; 186 N. Y. 599.)

*James E. Duross* for Atlas Powder Company, defendant, appellant.

*Walter S. Gill* for Conrad E. Hasbrouck, defendant, appellant.

*John J. Kinney* for Rosoff Sand and Gravel Corporation, defendant, appellant.

*Albert Ottinger, Attorney-General* (*Albert J. Danaher* of counsel), for respondent. The State has not consented to have its liability to a contractor determined in an action to foreclose a mechanic's lien. The Supreme Court was without authority to render the judgment entered herein. (*Matter of Hoople,* 179 N. Y. 308; *Sanders* v. *Saxton,* 182 N. Y. 477; *Republic of France* v. *Pittsburgh Steel Export Co., Inc.,* 112 Misc. Rep. 688; *Dietrich* v. *Palisades Interstate Park Comm.,* 114 Misc. Rep. 425; *Locke* v. *State,* 140 N. Y. 480; *People* v. *Third Nat. Bank of Syracuse,* 159 N. Y. 382; *People* v. *Dennison,* 84 N. Y. 272; *People* v. *Greylock Construction Co., Inc.,* 213 App. Div. 21; 240 N. Y. 710; *Smith* v. *State of New York,* 65 Misc. Rep. 376; *Alyea* v. *Citizens Savings Bank,* 12 App. Div.

574; 162 N. Y. 597; *Maneely* v. *City of New York,* 119 App. Div. 376; *Title Guaranty & Surety Co.* v. *Guernsey,* 205 Fed. Rep. 94.)

CARDOZO, J.   The State of New York by its Department of Public Works, Bureau of Highways, made a contract with the John L. Hayes Construction Company whereby for $355,264.40 the construction company was to construct a highway in Greene and Ulster counties. There were to be monthly estimates of the amount of work done and material in place.   Ninety per cent of the value so computed was thereupon to be paid to the contractor, the remaining ten per cent to be retained until the completion of the job.   The statute made it the duty of the counties to contribute a prescribed quota of the cost (Highway Law, §§ 139, 140, 141-a; Cons. Laws, ch. 25).   As between the parties to the contract, the obligation to pay at the times and in the amounts agreed was the obligation of the State.

On October 15, 1924, an installment of the price fell due in accordance with a monthly estimate.   To pay this installment, the State by its Bureau of Highways drew two drafts, dated October 20, 1924, one for $8,948.23, and the other for $348.25, to the order of the contractor, upon the treasurer of Ulster county.   The drafts were presented to the treasurer for payment, and payment was refused, the treasurer wrongfully taking the position that the contract was without binding force either on the State or on the county.   The contractor, deprived by these acts of the means of going forward with the work, gave notice to the State on October 31, 1924, that payment had not been made in accordance with the contract, and that work would cease thereafter.   The State retaliated with a notice on November 6, 1924, directing the contractor to go on, with warning that the default, if continued for ten days, would lead the State to declare the contract broken and to relet the work to others.   The

contractor did not go on, and the State declared a default in accordance with its notice.

The plaintiff brings this action to foreclose a mechnic's lien for labor furnished to the contractor in the building of the highway. He has joined as defendants the State of New York, and also other lienors. One of the defend- ants, the Westchester Trust Company, is an assignee of the liens of laborers for $6,791.88. To the extent of $23,700 it is the assignee of the contractor, by force of an assignment made on the stoppage of the work as collateral security for moneys previously loaned. The Special Term held that the State was in the wrong, and that there was due under the contract at the date of such default the sum of $75,138.34, the value of the work and material furnished at that time. From the moneys so found to be due, the State was directed to pay the claims of lienors, and also that of the Westchester Trust Company as the contractor's assignee. The payments thus directed did not exhaust the fund. The balance left over would, of course, belong to the contractor, but the court conceived itself to be powerless to make the necessary award. A contractor, unlike material- men or laborers, is without a lien against the State (Lien Law, § 5; Cons. Laws, ch. 33). For that reason, the judgment was in favor of lienors and assignee without prejudice to the remedy of the contractor by proceedings in the Court of Claims. In this ruling the contractor acquiesced. The appeal that followed was the State's.

The judgment of the Appellate Division requires for its understanding a summary of the provisions of the Lien Law. The statute says that one who performs labor for or furnishes materials to a contractor for a public improvement under a contract with the State or a municipal corporation shall have a lien upon the moneys of the State or the corporation to the extent of the amount due or to become due under the contract upon filing

10

a notice of lien in the form prescribed by law (Lien Law,
§ 5). The statute also says that this lien may be enforced
against the funds of the State in the same court and in
the same manner as a mechanic's lien on real property
(§ 42); that the State may be joined as a defendant in the
same manner as a private person (§ 44); and that the court
shall render judgment directing the State to pay to the
lienors so much of the money which may be found due
from the State to the contractor as will satisfy their
liens with interest and costs (§ 60).

Upon appeal to the Appellate Division, the Attorney-
General took the ground, as he does in this court, that
the Supreme Court is without jurisdiction to adjudge the
payment of such a lien unless there is a concession by the
State of money due to the contractor. Only in that
event, it is said, has the State consented to be sued
except in the Court of Claims. If the indebtedness is
disputed, the lienors are helpless.

The Appellate Division so held, and in thus holding
eviscerated the judgment. It wiped out all the pro-
visions adjudicating the default of the State and the
existence and amount of an indebtedness at the cessation
of the work. It left nothing but an adjudication that
the liens were enforcible against any sum that might
finally be determined to be due to the contractor in
an action in the Court of Claims. If such an action were
not brought, or being brought were determined adversely
to the contractor, the liens would not attach to anything.
They were left in the meantime suspended in mid-air.
Another action would be needed to bring them down to
earth.

We find no basis in the statute for this division of
judicial functions. The State has consented to be sued
in the ordinary courts of justice when the subject-matter
of the controversy is a lien upon money owing to its
contractor, and has consented that out of any money
that may be found to be so owing judgment may be

rendered directing payment to be made. In consent so explicit, we see no suggestion of a condition that the remedy is to fail if the debt shall be disputed. Justice and convenience combine with the plain wording of the statute in forbidding us to imply a condition so oppressive. No sensible reason can be imagined why the State, having consented to be sued, should thus paralyze the remedy. A court of dignity and power had the parties before it, and had heard the controversy between them. To transfer the controversy to the Court of Claims could work no gain to any interest worthy of protection. Indeed, the special limitations applicable to claims in that court (Court of Claims Act, § 12) might often bring it to pass that the claim would be barred before the transfer could be made. The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.

Our holding, therefore, is that there was jurisdiction to determine the sum chargeable with liens, and to direct payment to the lienors out of the balance so adjudged. A closer question is whether the Westchester Trust Company has the standing of a lienor in so far as it claims as the contractor's assignee. We have seen that a contractor with the State, unlike materialmen and laborers, is not a lienor. His remedy as plaintiff is by action in the Court of Claims. There is plausibility in the suggestion that the rights to be accorded to his assignee can be no greater than his own. We think, however, that other provisions of the Lien Law point to the conclusion that an assignee of moneys due under a contract for public improvement, when brought into court at the suit of lienors, is on a parity with lienors in respect of the remedies available. By section 16 of the act as construed in our decisions, the assignment takes precedence of liens subsequently filed (*Giant Portland Cement Co.* v. *State*, 232 N. Y. 395, 410; *Riverside Contg.*

Co. v. City of N. Y., 218 N. Y. 596; General Fireproofing Co. v. Keepsdry Const. Co., 225 N. Y. 180, 184, 185; Albany B. S. Co. v. Eastern B. & S. Co., 235 N. Y. 432, 437). An adjudication of the amount due upon it is, therefore, necessary as a preliminary to an effective adjudication of the sum due upon the liens. Section 42, as we have seen, provides that the lien against the State shall be enforced by a civil action in the same manner as mechanics' liens generally. This means, we think, that there shall be such cross-remedies among defendants claiming derivative interests in the fund by succession to the contractor, as may be necessary for complete relief. The Legislature cannot have had in view the creation of a form of action that would be a stunted and misshapen anomaly among equitable remedies. The effect of section 42 is to subject the remedy against the State to the provisions of section 45, whereby " the court may adjust and determine the equities of all the parties to the action and the order of priority of different liens, and determine all issues raised by any defense or counterclaim in the action." There is no need to consider whether a legitimate application of this principle would not require relief to be extended to a defendant contractor as well as to successors in interest, lienors and assignees. The contractor has not appealed and its remedies are not in question.

A point is made that non-payment of the drafts was not an adequate reason for rescission, and that the contractor was at fault in abandoning the work. We think the situation viewed in its entirety justifies the course pursued. The monthly payments were the fund from which the expenses of the work were to be met. The contractor could not go on if the fund was not supplied. The State may indeed have been entitled to a reasonable opportunity to provide the necessary moneys after the county treasurer's default (2 Williston on Sales, § 467-e). If it had sought such an opportunity when informed of the dishonor of the drafts, the contractor might have been in

the wrong in adhering to a precipitate rescission.  But that was not the State's position.  Informed that the drafts had been dishonored, it did not offer to make them good.  It merely told the contractor to proceed, and gave notice of reletting when the demand was not obeyed. Its theory seems to have been that the State was not in default because the county did not pay.  In the end there would be remedies available to hold the county to its duty.  Meanwhile, the contractor must wait, and, while waiting, must perform.  But that is not a fair construction of the contract, or of the obligation of the State thereunder. The contractor was not to be involved in quarrels between State and county.  They might make such arrangements as they pleased for the division among themselves of the cost of the improvement.  The obligee would look to the obligor for the performance of the covenants.  The State had covenanted to pay.  The covenant was broken if payment was not made, whether an insolvent bank or a recalcitrant county or any other misadventure was the occasion of the breach.  The breach must be repaired, or the contractor might rescind (*Wharton & Co.* v. *Winch,* 140 N. Y. 287; *Helgar Corp.* v. *Warner's Features, Inc.,* 222 N. Y. 449).

A point is also made that the aggregate award for liens may be in excess, for all that appears, of the moneys in the treasury of the State, appropriated to the contract. This is possible, it is said, as a result of the statutory division of the cost of the improvement between State and county.  The Legislature is not to be presumed to have appropriated to the contract a sum in excess of the State's quota of the cost.  The fact remains, however, that the statute authorizes the State to assume the obligation of the contract as a whole, and to pledge the credit of the State for the payment of the price.  What is not appropriated by the State is to be appropriated by the county.  " The portion of the cost to be borne by the county shall be appropriated and made immediately

available to the requisition or draft of the state commission of highways" when the board of supervisors approves the plans and estimate of cost (Highway Law, § 141-a). There is no denial that this was done. Other appropriation was unnecessary to permit the contract to be let. The State, in these circumstances, does not better its position by the plea that the wrong of one of its civil subdivisions is the cause of its default. Like any other delinquent obligor, it must submit to judgment for what it owes, whether the money is on hand or not. The contractor is not to suffer in his remedies because the fund may be too low. We are not concerned at the moment with the question whether the judgment for what is due can be effectively enforced. The validity of a judgment is not dependent on the assurance of collection. Confusion of thought is likely to ensue if we think of the judgment as imposing a lien on a specific *res* in the possession of the State. What is called the "lien" of materialmen or laborers under these provisions of the statute may be characterized more fitly as a right of subrogation to the contractor's cause of action. There is no specific fund identified and earmarked. There is a cause of action for money due upon a contract, with the pledge of the credit of the State as the assurance that the money will be paid. We must beware of identifying a lien upon such a right with a lien upon land. There is analogy rather than identity between the remedies available. The lien upon the cause of action does not fail because the State has lost or wasted or been unable to collect the fund to which it expected to resort for the payment of the debt. The lien attaches to the debt, and the lienors to the extent of their interests are statutory assignees. The failure of the fund, if failure there has been, has no greater significance as affecting the foreclosure of their liens than it would have if the action were at law with the contractor in the role of plaintiff.

The judgment of the Appellate Division should be

reversed and that of the Special Term affirmed, with costs in the Appellate Division and in this court.

HISCOCK, Ch. J., McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur; POUND, J., absent.

Judgment accordingly.