**HILL et al. v. UNITED STATES.**
Civil Action No. 811.

District Court, N. D. Texas,
Amarillo Division.

Oct. 17, 1947.

Hazelwood & Richards, of Amarillo, Tex., for plaintiffs.

Frank B. Potter, U. S. Atty., and A. W. Christian, Asst. U. S. Atty., both of Fort Worth, Tex., for defendant.

DOOLEY, District Judge.

This suit comes under the Federal Tort Claims Act of 1946, 60 Stat. 843, Title 28 U.S.C.A. § 931.[1] The plaintiffs allege that an army truck driven by a soldier negligently collided with an auto-

[1] "Subject to the provisions of this chapter, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, including the United States district courts for the Territories and possessions of the United States, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred."

mobile driven by one of the plaintiffs on a public highway. Three of the plaintiffs were in the automobile and each claims personal injuries sustained in the collision. The automobile is said to have been badly damaged. The Insurance Company plaintiff alleges a subrogation claim. The suit is to recover damages for personal injuries, also property loss, and to enforce the subrogation claim. The allegations of plaintiffs' complaint, so far as material here, are being taken as true for the purposes of this opinion.

Counsel for the Government filed a motion to dismiss the said subrogation claim on the ground that the Tort Claims Act does not authorize the maintenance of suits upon derivative claims, and that such claim is prohibited under the Anti-assignment Act, Title 31 U.S.C.A. § 203.[2]

The said insurance company had an automobile policy of indemnity insurance in force on the automobile in question at the time of the collision. The policy includes coverage for collision damage to the automobile and for medical, surgical, ambulance, hospital and nursing service, within a specified maximum limit, growing out of injuries sustained by occupants of the automobile in a collision. The insurer has paid its liability under said coverage terms of the policy. The plaintiffs include in their suit for damages the same loss and expenses specified in the coverage of the insurance policy. The said policy contains a provision, as follows:

"In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

Counsel for the Government have argued that the Tucker Act, Title 28 U.S.C.A. § 41(20),[3] is a proper comparative statute for consideration in determining the relation of the Anti-assignment Act to claims arising under the Tort Claims Act. I do not think it is a strong parallel.

Under the Tort Claims Act, a claim for more than $1,000, as were the claims in this suit, is not presentable to any officer or agency of the Government for ascertainment and allowance, nor does the Court of Claims have any original jurisdiction of such claims, but only a special appellate jurisdiction, subject to the consent of all parties. These unique pro-

---

[2] "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share, thereof, except as provided in section 204 of this title, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of at-torney to the person acknowledging the same."

[3] "The district courts shall have original jurisdiction as follows: * * *

"Suits against United States. Twentieth. Concurrent with the Court of Claims, of all claims not exceeding $10,-000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, and of all set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States, against any claimant against the Government in said court;"

visions place the present tort claims outside of the purview of the Anti-assignment Act. In Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 873, 29 L.Ed. 940, the Court in speaking of the Anti-assignment Act, which was then in language as still retained in the present statute, with some later additions, said:

"Section 3477 [31 U.S.C.A. § 203], it is clear, only refers to claims against the United States which can be presented by the claimant to some department or officer of the United States for payment, or may be prosecuted in the court of claims. The section simply forbids the assignment of such claims before their allowance, the ascertainment of the amount due thereon, and the issue of a warrant for their payment."

■ The purpose of that statute is to restrict voluntary assignments or powers of attorney for payment of claims against the Government, so as to better keep a steady status thereof, and in that way, for the benefit of the Government, facilitate the undistracted consideration, determination and safe payment of such claims. It is altogether for the protection of the Government. Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229; Bailey v. United States, 109 U.S. 432, 3 S.Ct. 272, 27 L.Ed. 988. The reason of the law does not hold good in the present circumstances. There is no controversy between the plaintiffs in this suit about the subrogation claim of the insurer. The other plaintiffs do not contest that claim. The insurance policy contains an express covenant of subrogation. But even without any express subrogation terms in the policy, the insurer would have an equitable right of subrogation by operation of law. The Liverpool & Great Western Steam Co. v. Phenix Insurance Co., 129 U.S. 397, 9 S.Ct. 469, 32 L.Ed. 788; The Atlas, 93 U.S. 302, 23 L.Ed. 863; Mobile & Montgomery R. Co. v. Jurey & Gillis, 111 U.S. 584, 4 S.Ct. 566, 28 L.Ed. 527. The Supreme Court in Houston v. Ormes, 252 U.S. 469, 40 S.Ct. 369, 370, 64 L.Ed. 667, says that in the enactment of said law the object of Congress "was to protect the government, not the claimant; and it does not stand in the way of giving effect to an assignment by operation of law after the claim has been allowed."

■ In this suit any recovery liquidating the tort claims, and enforcement of the subrogation claim, would be simultaneous, and with all parties before the court the Government would be fully protected under the judgment. The amount of its liability would remain unchanged. Clearly the Government, on the level of an individual litigant, irrespective of the subrogation claim, cannot take advantage of the payments made by the insurer to the other plaintiffs, on the theory that said payments diminish pro tanto what would otherwise be the amount of the Government's liability to the plaintiffs. Chicago, St. L. & N. O. R. Co. v. Pullman Southern Car Co., 139 U.S. 79, 11 S.Ct. 490, 35 L.Ed. 97; United States v. American Tobacco Co., 166 U.S. 468, 17 S.Ct. 619, 41 L.Ed. 1081; Texas & P. Ry. Co. v. Levi & Bro., 59 Tex. 674. The facts here fall neither within the actual letter, nor certainly the spirit, of the Anti-Assignment Act. The law must be read "according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending its operation." Moore v. United States, 249 U.S. 487, 39 S.Ct. 322, 63 L.Ed. 721. Still more to the point, the Supreme Court in Martin v. National Surety Co., supra, says [300 U.S. 588, 57 S.Ct. 534]:

"The fund is in court to be distributed to rival claimants, with the Government discharged irrespective of the outcome. * * * A transfer of the fund after payment is perfected is of no concern to anyone except the parties to the transaction, and this quite irrespective of the time of the assignment or the manner of its making."

See also Freedman's Savings & Trust Co. v. Shepherd, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163.

Another reason against the motion is rooted in the very language of the Tort Claims Act. It provides that within the bounds of the Act the Government is liable "to the same claimants, * * * and to the same extent" as a private person under like circumstances, according to the law of

the State. The relevant parts of the statute are fully set out in foot notes 1 and 4 hereto. Under the law of Texas, if the defendant in this suit were an individual instead of the Government, the subrogation claim in question could be maintained. Hartford Fire Insurance Co. v. Galveston H. & S. A. Ry. Co., Tex.Com.App., 239 S.W. 919; Magnolia Pipe Line Co, v. Security Union Insurance Co., Tex.Civ.App., 37 S.W.2d 1062; Wilson v. G. A. Stowers Furniture Co., Tex.Civ.App., 297 S.W. 352; F. H. Vahlsing, Inc., v. Hartford Fire Insurance Co., Tex.Civ.App., 108 S.W.2d 947; Sims v. Woods, Tex.Civ.App., 130 S.W.2d 424. The Government is likewise suable as to this subrogation claim. This conclusion does not raise any inconsistency with the Anti-assignment Act, but at most only subordinates that Act to the rather plain and specific language of the later Tort Claims Act.

Some other substantiation may be pointed out from the standpoint of comparative statutes. The two principal statutes waiving the sovereign immunity of the national Government in suits on tort, contain very similar provisions in putting the Government on a parity with a private litigant. These parallel provisions of the Tort Claims Act[4] and the Suits In Admiralty Act, Title 46 U.S.C.A. § 741 et seq.,[5] are quoted together in the margin for ready comparison. If anything, the Tort Claims Act has the more far reaching language. In other words, there ought to be as much liberality in the prosecution of suits under the Tort Claims Act as under the Suits In Admiralty Act. The courts have permitted the libelant to amend and claim as an assignee by the purchase of a certain vessel and the cause of action for damages thereto in the collision thereof with another vessel operated by a Government corporation, Charles Nelson Co. v. United States, D.C., 11 F.2d 906, and in a ship owner's libel in personam against the Government for damages in a collision between the libelant's ship and a dredge owned by the Government, have permitted the owner of the ship's cargo to intervene. A. H. Bull S. S. Co. v. United States, D.C., 21 F.2d 835.

■ Lastly, although the Government's motion raises primarily a question of substantive law, still it is sufficiently pertinent to mention briefly that the insurer's subrogation claim is clear of any impediment from a procedural standpoint. The provision of the Tort Claims Act governing procedure is quoted in the margin.[6] Rule 17 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that every action shall be prosecuted "in the name of the real party in interest," and the insurer is such party in the prosecution of its subrogation claim. McWhirter v. Otis Elevator Co., D.C., 40 F.Supp. 11; Williams v. Powers, D.C., 2 F.R.D. 362.

The motion herein has been overruled for the several reasons stated.

---

4 "Subject to the provisions of this chapter, the United States shall be liable in respect of such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the United States shall not be liable for interest prior to judgment, or for punitive damages." 28 U.S.C.A. § 931.

5 "Such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." 46 U.S.C.A. § 743.

6 "In actions under this subchapter, the forms of process, writs, pleadings, and motions, and the practice and procedure, shall be in accordance with the rules promulgated by the Supreme Court pursuant to section 723b and 723c of this title; and the same provisions for counterclaim and set-off, for interest upon judgments, and for payment of judgments, shall be applicable as in cases brought in the United States district courts under sections 41(20), 250(1), (2), 251, 254, 257, 258, 287, 289, 292, 761–765 of this title." 28 U.S.C.A. § 932.