## EMPLOYERS' FIRE INS. CO. et al. v. UNITED STATES et al.

No. 11743.

Circuit Court of Appeals, Ninth Circuit.

April 8, 1948.

Long & Levit, of Los Angeles, Cal., Percy V. Long and Bert W. Levit, both of San Francisco, Cal., and William H. Levit, of Los Angeles, Cal., for appellants.

James M. Carter, U. S. Atty., Ronald Walker and Reuben Rosensweig, Asst. U. S. Attys., all of Los Angeles, Cal., for the United States.

Before GARRECHT, MATHEWS and ORR, Circuit Judges.

ORR, Circuit Judge.

A United States Army airplane, while engaged in training maneuvers, crashed into a building in which a restaurant business was being conducted. The crash resulted in the death of Tillie Rusconi, one of the proprietors of the restaurant, destruction of the restaurant's fixtures and stock; and damage to the building to such an extent that the lease on the building was terminated.

The owners of the building, the Administrator of the Estate of Tillie Rusconi, and

---

[6] Schreffler v. Bowles, 10 Cir., 153 F.2d 1, 3; Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469, 472, 473.

others, instituted an action against the United States under authority granted by the Federal Tort Claims Act, 28 U.S.C.A. § 931.

Appellants, Fire Insurance Companies, had issued policies of fire insurance covering fixtures and stock in trade of the restaurant. Pursuant to an adjustment made with the insured appellants paid them the sum of $9,100, as their liability for the loss sustained from the crash and resultant fire.

Appellants filed a motion for leave to intervene in the suit instituted by the restaurant owners and others against the United States, claiming that by virtue of the payment made to the parties who are plaintiffs in the action against the United States they had been subrogated, pro tanto, to said plaintiffs' rights. The motion was made under rules 17, 18, 24(a) and 24(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The motion to intervene was denied on the ground that the Federal Tort Claims Act does not expressly grant consent to suit by subrogees, and that consent of the Government to be sued being a relinquishment of sovereign immunity the act must be strictly construed.

The question posed has been presented to several district courts of other circuits and very able opinions have been written by the Judges of those courts. Niagara Fire Ins. Co. v. United States, D.C.S.D.N.Y., 76 F. Supp. 850; Hill v. United States, D.C.Tex., 74 F.Supp. 129; Wojciuk v. United States, D.C.E.D.Wis., 74 F.Supp. 914; Forrester v. United States, D.C.E.D.Wis., 75 F.Supp. 272; Insurance Co. of North America, D.C. E.D.Va., 76 F.Supp. 951; Town of Amherst v. United States, D.C.W.D.N.Y., 77 F.Supp. 80. We are persuaded that a proper construction of 28 U.S.C.A. § 931 permits the institution of an action against the United States and the right to intervene in a pending action by a subrogee.

In reading Judge Medina's opinion in Niagara Fire Ins. Co. v. United States, supra, we note that he quotes with approval the following from Judge Cardozo's opinion in Anderson v. John L. Hayes Construction Company, 243 N.Y. 140, 147, 153 N.E. 28: "The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced." This quotation is particularly applicable to the question here presented.

■ United States District Courts are given jurisdiction to render a money judgment "on any claim" against the United States "on account of" property damage or loss or personal injury or death caused by the negligence of government employees acting in the scope of their authority "under circumstances where the United States, if a private person, would be liable to the claimant for such damage * * * in accordance with the law of the place where the act or omission occurred * * *." The words of the Act indicate a clear and sweeping waiver of immunity. Appellant subrogees are claimants whose claims exist "on account of" damage to property. There is nothing in the phrase "on account of" to support the government's contention that Congress intended the word "claimant" as used in the statute to refer only to one originally sustaining the loss or injury. The same phrase was utilized in the Small Tort Claims Act, 31 U.S.C.A. § 215, under which subrogees' claims were consistently approved by Congress.

In the Federal Tort Claims Act, Congress, though granting jurisdiction generally to the Federal Courts to render judgment on "any claim", designated twelve categories of claims of which the Federal Tort Claims Act was not meant to apply. Claims of subrogees were not included therein. Had Congress intended to exclude subrogated claims, it would have undoubtedly designated them as one of the categories which the Act was not meant to cover.

Since 28 U.S.C.A. § 931 grants jurisdiction to render money judgments "under circumstances where the United States, if a private person, would be liable * * * in accordance with the law of the place where the act or omission occurred", and further provides for liability "in the same manner, and to the same extent, as a private individual under like circumstances" it

seems clear that the United States "if a private person" would be liable to the subrogated claimant, for such is the law of California, "where the act or omission occurred". Offer v. Superior Court, 194 Cal. 114, 228 P. 11.

The narrow construction urged by the Government finds no basis in the legislative history of the Federal Tort Claims Act nor in a comparison with analogous federal legislation. Prior to the enactment of the Federal Tort Claims Act, certain categories of claims, not in excess of $1,000, were disposed of administratively by virtue of the Small Tort Claims Act. Claims in excess of $1,000 were presented directly to Congress. The small Tort Claims Act provided that the head of each department could determine any claim "on account of damage to or loss of privately owned property where the amount of the claim does not exceed $1,000". In connection with this language, the problem arose as to whether subrogated claims were included, and the Attorney General, on June 29, 1932, rendered an opinion that claims of subrogees were covered by the statute. (36 Op.Atty.Gen. 553) This interpretation of language nearly identical to that employed in the Federal Tort Claims Act was consistently followed by Congress in appropriating sums for the payment of subrogated claims thus certified; and moreover, a like interpretation was placed by the Comptroller General on other statutes in pari materia, containing the language "on account of damage to or loss of privately owned property". 19 Comp.Gen. 503, 506-7, Nov. 18, 1939; 21 Comp.Gen. 341, Oct. 17, 1941; 22 Comp. Gen. 611, Jan. 7, 1943. See Niagara Fire Ins. Co. v. United States, D.C.S.D.N.Y., 76 F.Supp. 850.

As a consequence of this practice of administrative and Congressional disposition of tort claims against the United States Congress was harassed by a myriad of time-consuming private claims. When the Legislative Reorganization Act of 1946, 60 Stat. 812, was passed, Congress shifted the burden of determining negligence claims to the Federal Courts in Title IV of that Act, namely, the Federal Tort Claims Act. Congress must have had in mind the existence of liability insurance and of the then existing practice in regard to subrogated claims. In fact, the attention of the House Claims Committee was specifically directed to the point by the Assistant Attorney General. Had Congress intended to exclude subrogated claims, it could have made provision similar to that in the Foreign Claims Act, 31 U.S.C.A. § 224(d) which contains the phrase "including claims of insured but excluding claims of subrogees". We think that with this historical background the failure to expressly exclude subrogated claims is strong evidence of an intention to include them. It does not seem reasonable to suppose Congress intended to transfer the power of determining original claims to the Federal Courts and to retain for itself the determination of claims of subrogees.

Our attention has been directed by counsel to comparisons between the Federal Tort Claims Act and the Tucker Act, 10 Stat. 612, on the one hand, and the Suits in Admiralty Act, 46 U.S.C.A. § 742, on the other. We agree that the Suits in Admiralty Act is more nearly analogous. A comparison of the Federal Tort Claims Act with the Suits in Admiralty Act may reasonably lead to the conclusion that the language of the Tort Claims Act is broader. Hill v. United States, D.C., 74 F.Supp. 129. Both statutes employ the formula "where the United States, if a private person, would be liable". It is not questioned that the Suits in Admiralty Act covers claims of subrogees.

■ The Government has premised its position largely on the principle that statutes in derogation of sovereign immunity must be strictly construed. Where a statute contains a clear and sweeping waiver of immunity from suit on all claims with certain well defined exceptions, resort to that rule cannot be had in order to enlarge the exceptions.

■ The Government finally seeks to invoke the limitations of the Anti-Assignment Act. 31 U.S.C.A. § 203. That Act has reference only to voluntary assignments of claims against the United States, and not to transfers of title by operation of law. Western Pacific Railroad Co. v. United

States, 268 U. S. 271, 45 S.Ct. 503, 69 L. Ed. 951; Morgenthau v. Fidelity & Deposit Co., 68 App.D.C. 163, 94 F.2d 632.

The order denying appellants' motion for leave to intervene as parties plaintiff in this action is reversed