SOUTH CAROLINA STATE HIGHWAY DEPARTMENT et al. v. UNITED STATES.

Civil Action No. 1787.

District Court, E. D. South Carolina, Charleston Division.

June 15, 1948.

See also 78 F.Supp. 598.

John M. Daniel, Atty. Gen., of South Carolina, Huger Sinkler and Augustine T. Smythe, both of Charleston, S. C., and Helms & Mulliss, of Charlotte, N. C., for plaintiffs.

Ben Scott Whaley, U. S. Atty., and Moore & Mouzon, all of Charleston, S. C., for the United States.

WARING, District Judge.

The above entitled cause is brought under the Federal Tort Claims Act, 28 U.S.C.A. § 931 et seq., and is based upon a collision of the Nicaragua Victory, a vessel owned by the United States, with a bridge spanning the Cooper River in Charleston Harbor. The ship was anchored above the bridge and as a result of a heavy wind storm and ebbing tide dragged her anchor and drifted into the bridge, knocking out several spans. The bridge at that time was operating under a toll collection system, and suit was brought against the United States to recover damages for the physical injury to the bridge and the loss of revenue during the period when traffic was cut off. The plaintiffs allege that the collision was the result of negligence of the officers and crew of the vessel acting within the scope of their duty.

One of the plaintiffs is the South Carolina State Highway Department, which is and was the owner of the bridge. The other plaintiffs are insurance companies. It appears that the State had effected property insurance as well as use and occupancy insurance, and as a result of the damages to the bridge, it collected from the plaintiff insurance companies various amounts, both on the property and the use and occupancy policies. The insurance companies joined in this suit with the Highway Department to the extent of their payments upon the policies, claiming that they are entitled to subrogation. The complaint is drawn on the theory that the insurance companies, through their subrogation, have the right to be made parties because they are the real parties in interest (Rule 17 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c), and also the alternate allegation is made that the State Highway Department is entitled to collect the full amount and itself distribute the funds so collected between itself and the insurance companies.

The matter comes before the court on motion to dismiss the insurance companies as improperly joined and not having the right to act as parties plaintiff. The main motion is based flatly upon the contention that there is no right of subrogation and that only parties actually suffering loss are entitled to take advantage of the Tort Claims Act and the act must be strictly construed, it being a waiver of sovereign immunity. An additional motion to dismiss is made as to two of the plaintiffs, namely, Western Assurance Company and Sun Insurance Office, Ltd. of London, on the ground that they are foreign companies (the first being Canadian and the second being British) and that they are not entitled to become parties plaintiff in an American court since no specific right has been granted to that effect, and that even if they have any rights as plaintiffs, they must show that their respective nations have granted reciprocal rights to American citizens.

The first and main question is that of subrogation and must be given primary consideration. The applicable section of the Tort Claims Act, 28 U.S.C.A. § 931, is as follows:

"Jurisdiction; liability of United States; judgment; election by claimant; amount of suit; administrative disposition as evidence .

"(a) Subject to the provisions of this chapter the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, including the United States district courts for the Territories and possessions of the United States, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like

596

circumstances, except that the United States shall not be liable for interest prior to judgment, or for punitive damages."

It will thus be seen that the district court is given jurisdiction of "any claim" for money only against the United States "on account of" damage to or loss of property caused by the fault of any employee of the government acting within the scope of his office or employment under circumstances where the United States if a private person would be liable to the claimant for such damage in accordance with the law of the place where the act or omission occurred. It is undoubtedly true that the subrogees here make their claims on account of damage to property and they are claimants and the phrase "on account of" is certainly sufficiently broad to include these claims by subrogation.

My attention has been called to practice and decisions under Title 31 U.S.C.A. § 215, known as the Small Tort Claims Act, which has been repealed and is now superseded by the present act. Administrative handling of the former act for a number of years recognized the rights of subrogees, and while this is not controlling in the construction of the present act, it must have been clearly in the minds of the framers of the present law and their advisers.

It is argued that because the United States is a sovereign and cannot be sued without its express consent, that this act must be very strictly construed and that the language must be clear and unambiguous. Of course this is true but it does not mean that every possible form of claim or claimant is to be named in the act. Modern legislatures have recognized the hardship of the old doctrine that the King can do no wrong, and repeatedly statutes have been enacted liberalizing the sovereign immunity rule in allowing claims against government. And not only have the legislatures recognized that amelioration should be granted, but the courts have taken a sounder and more liberal view of construction. This was well expressed by Mr. Justice Cardozo when he was a member of the Court of Appeals of New York, where he says in Anderson v. John L. Hayes Construction Co., 243 N.Y., 140, 147, 153 N.E. 28, 29:

"The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced."

One of the most interesting cases that has been brought to my attention is that of Niagara Fire Insurance Company v. United States (See note at end of this opinion), where a complete and compelling opinion is filed by Judge Harold R. Medina, sitting in the Southern District of New York. The facts set out in that case, while only collaterally applicable to the case at bar, were directly applicable to the case there under consideration and throw an interesting light on the intent of Congress. The Niagara case arose out of damages caused by a collision of a United States Army airplane with the Empire State Building in New York City. This occurred in 1945 and prior to the enactment of the Federal Tort Claims Act. The Niagara and other insurance companies paid claims made by their insured as a result of this collision and their only remedy being by a private act, applied to Congress for relief. A bill was introduced into Congress and was given consideration by the Committee on Claims of the House of Representatives. The Committee made an exhaustive investigation and report and recommended that legislation be enacted to pay the claims of these insurance companies which had been subrogated to the extent of their payments. It was shown by the Committee Report that the government had many times made settlement administratively of small amounts under Title 31 U.S.C.A. § 223 to subrogees, as well as to prime claimants, and that such was a fair and just policy. And the Committee recommended payment to the Niagara and other companies of their claims. This Committee Report was dated July 24, 1946, and while it was not an act of the Congress, it is the act of its Committee which had made thorough investigation and clearly shows the state of mind of those Congressmen who were especially familiar with matters of this kind. The Report was made to Congress just 9 days prior to the enactment of the Federal Tort Claims Act and the last-named act provides that no private bill shall authorize

the payment of money for which suit might be brought under the act, and therefore the private act for the Niagara and other insurance companies was dropped, the Tort Claims Act having obviated the necessity for it.

A considerable number of cases on this question have been decided in various 'istrict courts, and while the views of the District Judges have been at times in sharp conflict, I believe that the better trend of opinion is distinctly along the same line as that set forth by Judge Medina and others holding that subrogees are entitled to become claimants. In the Southern District of California, in the case of Rusconi v. United States, the District Court dismissed the complaint of subrogees, but this case has been reversed by the Circuit Court of Appeals for the 9th Circuit. See Employers' Fire Insurance Company et al, v. United States et al, 167 F.2d 655, 657, decided April 8, 1948. The Court there reviews the history of similar legislation and calls attention to the legislative history of the Tort Claims Act and particularly to administrative procedure under the Small Tort Claims Act and the views taken by the Attorney General and the Comptroller General, and the Court says: "As a consequence of this practice of administrative and Congressional disposition of tort claims against the United States Congress was harassed by a myriad of time-consuming private claims. When the Legislature Reorganization Act of 1946, 60 Stat. 812, was passed, Congress shifted the burden of determining negligence claims to the Federal Courts in Title IV of that Act, namely, the Federal Tort Claims Act. Congress must have had in mind the existence of liability insurance and of the then existing practice in regard to subrogated claims. In fact, the attention of the House Claims Committee was specifically directed to the point by the Assistant Attorney General. Had Congress intended to exclude subrogated claims, it could have made provision similar to that in the Foreign Claims Act, 31 U.S.C.A. § 224d which contains the phrase 'including claims of insured but excluding claims of subrogees.' We think that with this historical background the failure to expressly exclude subrogated claims is strong evidence of an intention to include them. It does not seem reasonable to suppose Congress intended to transfer the power of determining original claims to the Federal Courts and to retain for itself the determination of claims of subrogees."

So much for such authorities as have been cited or brought to my attention. (These will be found in a note at the end of this opinion). The act under consideration is new and dozens of cases are arising all over the country. It is probable that since this matter was submitted to me a number of other decisions have been handed down. No word has come from the Supreme Court of the United States nor have I seen any decision from the 4th Circuit, and therefore the foregoing are not binding but only persuasive. It appears to me that an analysis of these will show that the earlier cases generally denied the right of subrogees, some of the opinions being mere memoranda, but the later and more considered opinions show a decided tendency to the liberal and, to my mind, proper view of allowing subrogation. It is significant that the only Circuit Court of Appeals decision which I have found holds that way.

The language of the act certainly in no way forbids subrogation and it is broad and it seems to me clear that the act was intended to allow any parties having valid claims against the government for the type of injuries or damages set forth in the act to bring their suit in the proper court having jurisdiction thereof. It would seem to be a clear denial of justice to say that only an original or prime claimant would be recognized. Modern thought and modern business favors the protection of risks by appropriate insurance coverage. To take the narrow construction suggested in this case would put a premium upon lack of prudence in failing to insure business risks. There is no reason or just basis for taking the position that the government is liable and must respond in damages for the tortious acts of its employees to one who did not have the foresight to protect himself by insurance, but that for equally negligent and tortious acts it is saved from reimbursement where prudence has effected insurance coverage. Would not this put a premium upon fraud and deception where-

by insurance coverage would be kept secret and real parties in interest would be concealed, because to show the truth would negative a just claim. And so I am constrained, not merely by the weight of reasoned authority, as shown in many court decisions, but also by a sense of common fairness and justice to hold that the insurance companies, the subrogees in this case, are entitled to become plaintiffs in their own right and names, and I refuse to grant the motion to dismiss.

The next question raised is as to whether foreign companies have any status in this court. I do not find where the Tort Claims Act puts any penalty upon a foreign insurance company doing business in this country. It has been shown by what I deem adequate and sufficient testimony that American companies in like plight have the right to pursue their claims in both Canada and Great Britain, and that would seem to entitle these companies to the right to bring suit, even if it be held that right is dependent upon reciprocity. I do not however, find that the Tort Claims Act requires any such reciprocity, and I hold that irrespective of whether there is such or not, that the two foreign insurance companies have a right to appear as parties plaintiff in this court.

For the foregoing reasons I am of the opinion that the motion to dismiss the insurance companies from this suit should be refused. And

It is so ordered.

NOTE: The following cases, some of which are reported and some of which were not reported at the time they were cited to me, have been called to my attention: Rusconi v. United States, D.C., 74 F.Supp. 669; Old Colony Ins. Co. v. United States, D.C., 74 F.Supp. 723; Hill v. United States, D.C., 74 F.Supp., 129; Wojciuk v. United States, D.C., 74 F.Supp. 914; Forrester v. United States, D.C., 75 F.Supp. 272; Aetna Casualty & Surety Co. v. United States, D.C., E.D.N.Y., 76 F.Supp. 333; Insurance Co. of North America v. United States, D.C., E.D.Va., 76 F.Supp. 951; Niagara Fire Ins. Co. v. United States, D.C., S.D.N.Y., 76 F.Supp. 850.

The first of the above cases, namely, the Rusconi case, has been reversed by the Circuit Court of Appeals for the 9th Circuit and opinion filed April 8, 1948 (together with a companion case filed on the same date). See Employers' Fire Ins. Co. et al., v. United States et al., 167 F.2d 655.

Other unreported decisions were named but no opinions furnished.