PATSY LANNA, Plaintiff, *v.* C. L. GATES, INC., and Others, Defendants.

Supreme Court, Genesee County, December 12, 1931.

*Kelly & Davison*, for the plaintiff.

*John W. Ryan* and *Harold V. Cook*, for Peoples Bank of Hamburg.

*Henry W. Williams*, for Glens Falls Portland Cement Company.

*Slee, O'Brien, Hellings & Ulsh*, for Buffalo Slag Company, Inc.

*Henry J. Kelly* [*Howard A. Kelly* of counsel], for George W. Whitlock.

*William J. Darch*, for Batavia Washed Sand and Gravel Company, Inc., and Steve Twandowski.

*George W. Babcock*, for Genesee Stone Products Corporation and Lawrence W. Whitlock.

*Day & Day*, for Liberty Street Lumber & Coal Co., Inc.

*Merwin, Paul, Lesswing & Hickman*, for Clarence L. Gates, Inc., Pearl K. Gates, and other lienors.

*Hamilton Ward*, for Columbia Casualty Company.

*Dudley, Stowe & Sawyer* [*Roy P. Ohlin* of counsel], for C. C. Powers and Charles F. Feldman, receivers of Wickwire Spencer Steel Company.

*John O'Day*, for Atlantic Refining Company.

*Leroy Ernest*, for Farley Brothers.

*James F. Kelly*, for Richard Engelfried and William Gonglewski.

*Frank A. Corti*, for Matty Recchio, Ralph Recchio and other lienors.

CHARLES B. WHEELER, Official Referee. This is an action to establish liens and claims on a fund in the possession of the State growing out of a public improvement in the building of a State highway known as the Stafford-Byron highway, which the defendant C. L. Gates, Inc., contracted with the State to construct.

A fund of $36,894.85 is in the hands of the State Comptroller subject to distribution to those entitled to receive it.

The main contest arises over the validity of an assignment made by the contractor to the Peoples Bank of Hamburg to secure an indebtedness owing to the bank by the contractor. Numerous liens have been filed against the fund by subcontractors, material-

men and laborers, and these various lienors contend the assignment to the bank is illegal and void, and the lienors are entitled to payment in preference to the bank.

The contract bears date the 29th day of May, 1930. After its making C. L. Gates, Inc., entered upon the performance of the work, but the State Highway Department subsequently took over the completion of the work, and after charging the contractor with the increased cost of construction the fund in question remained.

The contractor is an incorporated company and appears to have been organized without much capital and was compelled to borrow money from the defendant bank to finance its operations.

On July 5, 1930, the Peoples Bank of Hamburg loaned to C. L. Gates, Inc., the sum of $30,000, and on July 31, 1930, the further sum of $15,000, making in all the sum of $45,000. Of this amount $15,087.50 was applied by the bank on a prior loan which had no relation to the contract now under consideration, but the evidence shows the balance of the loans made by the bank were expended in the prosecution of the work under this contract, and there is now due and owing the bank by C. L. Gates, Inc., the sum of $25,749, with interest on $15,000 from August 31, 1930, and interest on $10,749 from December 1, 1930, to date.

The bank was given by the contractor certain written guaranties by the Columbia Casualty Company for the payment of notes given by the contractor. The liability of the guaranty company on these guaranties is now in litigation. However, the evidence shows that on or about October 6, 1930, the agent of the casualty company brought and delivered to the bank an assignment bearing that date, whereby C. L. Gates, Inc., assigned and transferred to said bank all moneys due and to become due on or by virtue of the said contract with the State. This assignment was filed by the bank in the proper State departments, and by virtue thereof the bank claims the funds subject to distribution prior to the payment to the claims of the various lienors plaintiff and defendant.

The lienors, however, contend the assignment to the bank is illegal and void. This contention is based on several grounds. First, it is contended the assignment is invalid for a failure to comply with the requirements of subdivision 5 of section 25 of the Lien Law (as amd. by Laws of 1930, chap. 859) providing: " Every assignment of moneys, or any part thereof, due or to become due under a contract for a public improvement shall contain a covenant by the assignor that he will receive any moneys advanced thereunder by the assignee as a trust fund to be first applied to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, and to the pay-

ment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement, and that he will apply the same to such payments only, before using any part of the advances for any other purpose. Nothing in this subdivision shall be considered as imposing upon the assignee any obligation to see to the proper application of the moneys advanced under such assignment by the assignee."

The assignment in question contained no such covenant.

In order to obtain the benefit of the provisions of the Lien Law there must be a substantial compliance with its requirements and we are of the opinion that the omission is fatal to the validity of the assignment given.

Again by the first subdivision of section 25 of the Lien Law (as amd. by Laws of 1930, chap. 859) it is further provided: " An assignee of moneys, or any part thereof, due or to become due under a contract for a public improvement, whose assignment is duly filed prior to the filing of a notice of lien or assignment of every other party to the action, shall have priority over those parties to the extent of moneys advanced made upon such assignment before the filing of the notice of lien or assignment next subsequent to his assignment, but as to advances made subsequent to a notice of lien or assignment filed and unsatisfied such assignee for the purpose of determining his proportionate share of moneys available for distribution as provided in subdivision four of this section shall be treated as a lienor having a lien to the extent of advances so made."

It is to be noted that an assignment of moneys due or to become due for a public improvement, if otherwise valid, so far as priority is concerned, is confined " to the extent of moneys advanced made upon such assignment before the filing of the notice of lien or assignment next subsequent to his assignment, * * *."

In the instant case, however, no moneys were advanced by the bank by reason of the assignment. The entire indebtedness of the contractor to the bank was created prior to the giving of the assignment, and nothing was advanced by the bank on or after October 6, 1930, the date of the instrument.

The provisions of the Lien Law plainly indicate that assignments of moneys due or to become due for public improvements are only authorized where they are to secure advances to be made and not for past indebtedness, and then only where the assignor agrees to hold the money advanced in trust for payment of subcontractors, materialmen, laborers and others arising out of the improvement.

Any valid assignment must be filed. These provisions were doubtless intended by the Legislature to enable subcontractors and

others dealing with the contractor to know how far credit could be safely given, and to be assured that assignments of moneys due or to grow due should go exclusively to enable the contractor to carry on the improvement in hand.

It is, however, contended by counsel for the defendant Peoples Bank of Hamburg that the foregoing provisions of the Lien Law above quoted by the referee constitute a part of a revision of the Lien Law passed by the Legislature of 1930, and that by the express terms of the act it was to " *take effect October first, nineteen hundred thirty.*" (See Laws of 1930, chap. 859, § 24.) The act was passed and approved April 28, 1930. It is argued that inasmuch as the contract for the building of the highway in question bears date the 29th day of May, 1930, the provisions of the amended and revised Lien Law have no application to a contract made prior to October 1, 1930.

It must be borne in mind that the assignment attacked purports to have been made on October 6, 1930, after the provisions of the amended act concededly became the law. Section 22 of the Lien Law (as amd. by Laws of 1930, chap. 859, § 14) does declare that " No assignment of the moneys due or to become due under a building loan contract, under the provisions of section twenty-six of this article, nor any payment to the holder of such assignment, shall be or be construed to be a modification of a building loan contract within the meaning of this section, * * *."

This language does not apply to *all* contracts made prior to October 1, 1930, but is limited to " *building loan contracts.*" No other contract is mentioned.

It would seem by necessary implication that the act refers and applies to all assignments made after October 1, 1930, and that its prohibitions and limitations governed all a contractor might do or attempt to do after that date.

It is to be noted that the amendments in question were in fact passed by the Legislature prior to the making of the contract. The question of law, therefore, presented is whether the amendments going into effect October 1, 1930, govern and control acts done by the contractor subsequent to October 1, 1930.

The contractor is presumed to know the provisions of legislation enacted by the Legislature, and knew when entering into its contract with the State that the amendments restricted the making of assignments except for the purposes and in the manner prescribed in the amendments.

We are of the opinion that the contractor must be deemed to have contracted with these restrictions in mind, and in contemplation of the amendments, and that after the date named certain acts on its part were forbidden. If this view is correct, then it

follows that it avoids a construction of the Lien Law making the amendments retroactive. We think the Legislature had a perfect right to pass legislation to the effect that after a certain date in the future certain things should or should not be done, and that every one thereafter is bound in law to respect such legislation.

It follows, therefore, that the provisions of the amendments going into effect October 1, 1930, govern and control. The defendant bank further contends that by the provisions of section 32 of the Lien Law the assignment attacked as invalid is protected. This section reads: " Certain liens and claims not to be affected. The amendments contained in this act shall not apply to mechanics' liens, building loan contracts, mortgages, assignments and orders referred to in section fifteen, attachments, judgments, or to claims or liens acquired in any action or proceeding upon such mechanics' liens, building loan contracts, mortgages, assignments and orders, attachments or judgments, filed, recorded, docketed, entered or obtained, or to contracts for the improvement of real property made, prior to the date when this chapter, as amended, takes effect."

This section was passed by the Legislature by chapter 515 of the Laws of 1929. The section refers back to section 15 of the act (as amd. by Laws of 1929, chap. 515), and section 15 refers " to an assignment of a *contract* for the performance of labor or the furnishing of material for the improvement of *real property.*"

The Lien Law makes clear distinction in its various sections between liens on improvements made on " *real property* " and liens for a " *public improvement*," and we are of the opinion that sections 32 and 15 refer and govern only contracts and liens relating to real property as distinguished from liens asserted on funds growing out of public improvements. Whether the referee is right or wrong in this view of the case it can make no difference in the disposition of the instant case if the referee is right in the view that section 25 of the Lien Law applies to all acts of a contractor done subsequent to October 1, 1930.

The lienors further contend that the assignment to the bank is void because it was given in violation of the provisions of section 15 of the Stock Corporation Law (as amd. by Laws of 1929, chap. 653) declaring that " no conveyance, assignment or transfer of any property of any such corporation * * * when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid."

We think the evidence fully justifies the finding that the contractor was in fact insolvent at the time of making the assignment to the bank. Its assets consisted of some $36,000 owing by the

State and certain equipment worth about $800. It owed the bank upwards of $25,000 and to the various lienors about $30,000 which it has not paid. This was its financial condition.

The president of the bank was one of the directors of the contractor. He testified that the bank would not have made the loans it did to the contractor but for the guaranty of their payment by the casualty company. It appears that the bank did not ask for the assignment. The casualty company evidently became disturbed by reason of its guaranty and it was the casualty company which procured the execution of the assignment and took it to the bank without any previous demand for it by the bank. In doing this the casualty company evidently was seeking to protect itself against its guaranty by procuring the assignment in the hope that the bank would get its pay by virtue of the assignment and so relieve the casualty company to that extent by reason of its guaranty.

That an assignment so given is void by virtue of the statute quoted is fully sustained by the decision of the Court of Appeals in *Lane & Son* v. *County of Westchester* (248 N. Y. 298), where the facts were substantially the same as in the present case.

The lienors further contend that the assignment to the bank is illegal and void because the president of C. L. Gates, Inc., had no authority to execute it. Certainly there appears to have been no action taken by the board of trustees of the company authorizing the assignment. In view, however, of the opinion of the referee touching the invalidity of the assignment on other grounds he is of the opinion it is unnecessary to discuss this phase of the case.

The lien of Farley Brothers for $116.25 must be disallowed for the reason that it was never renewed as required by statute.

The referee, therefore, finds and directs that the liens of laborers as established be first paid out of the funds in the Comptroller's hands; that after the payment of the laborers' liens the other lienors be paid the amount of their respective liens, and the balance of said fund be paid to the Peoples Bank of Hamburg.

This last direction may appear inconsistent with the holding that the assignment to the bank is illegal as given in violation of section 15 of the Stock Corporation Law. It is, however, void only as to creditors of C. L. Gates, Inc., and otherwise good as a common-law assignment between the company and the bank. The evidence in this action does not disclose what other creditors of C. L. Gates, Inc., there are, if any. There may be none other than the bank itself. The referee in this action cannot adjudicate the rights of others not parties to this action. We, therefore, are of the opinion that after the payment of lienors any sum remaining should be

paid to the Bank of Hamburg. Such payment and receipt of money by the bank would be subject to any legitimate claims of other creditors, if such there are, and the right to follow such funds paid over to the bank.

The matter of costs remains. The attorney for the plaintiff is entitled to a full bill of costs. Each of the other attorneys appearing for lienors is awarded a bill of costs to be taxed. Plaintiff's attorney asks for an extra allowance, but under the decisions if such are to be allowed it is held the referee has no authority to award extra costs, but application therefor must be made to the Special Term of this court. Costs should be paid out of the fund subject to distribution.