Thomas C. VINCENT, etc., Plaintiff,

v.

P. R. MATTHEWS CO., Inc., People of the State of New York, et al., Defendants.

HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant and Third Party Plaintiff,

v.

P. R. MATTHEWS CO., Inc., Peter R. Matthews, Alice Matthews, Albert Weiss, Third Party Defendants.

Civ. No. 3976.

United States District Court
N. D. New York.

Argued Nov. 9, 1953.

Submitted April 2, 1954.

Decided April 13, 1954.

Nathaniel L. Goldstein, Atty. Gen., John F. Hmiel, Asst. Atty. Gen., for State of New York.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., T. Joseph Coffey, Asst. U. S. Atty., Auburn, N. Y., for United States.

Andrew Eckel, New York City, for Hartford Acc. & Ind. Co.

Barry & Katzman, New York City, for defendant Julius Klein.

BRENNAN, District Judge.

There is in the background of these motions the question of affording the litigants complete relief in a single litigation where the presence of the United States and the State of New York, as parties, is required. The United States denies jurisdiction over it in the Supreme Court of the State of New York, and the State of New York denies jurisdiction in the United States District Court.

The action is for the enforcement of a lien under a contract for a public improvement within the State of New York. It may generally be referred to as a mechanic's lien foreclosure action. On November 17, 1949, the State of New York entered into a contract for the repair of facilities at the Hudson River State Hospital, Poughkeepsie, New York. The primary contractor was Matthews Co., Inc., and the Hartford Accident and Indemnity Company, hereinafter referred to as Hartford, delivered to the State of New York a performance bond in accordance with the provisions of the state law. The bond in a general way was conditioned for the faithful performance of the terms of the contract. Matthews Co. defaulted in its contract, which was completed by Hartford, the surety. Hartford was paid by the State the cost of such completion. Because of the contractor's default in the payment for labor and materials, numerous liens were filed. The United States filed tax liens in the amount of about $30,000, and the defendant Klein filed an assignment executed by Matthews in the amount of $25,000. Action was commenced in the Supreme Court of Albany County by a subcontractor against the main contractor, Hartford, Klein, and some fifteen lienors to enforce its lien in accordance with the provisions of the Lien Law of the State of New York. McKinney's Consol.Laws, c. 33. On June 30, 1951, the United States, invoking the provisions of Title 28 U.S.C.A. §§ 2410 and 1444, removed the cause into this court. Some time elapsed, and Hartford for valuable considerations procured the assignment from all lienors of their interest in the fund held by the State and in the cause of action. Hartford did not, however, succeed to the rights or interest of the United States or of the defendant Klein. For all practical purposes the parties now interested in this litigation are the State of New York, Hartford, the United States, and Klein. The pleadings have been amended accordingly.

There does not seem to be any serious factual dispute involved in this litigation. It is indicated that at the time of the default of the contractor, the State of New York concedes that there was due him the sum of about $48,000. It appears that there is no dispute but that the liens filed attached thereto. The State, however, holds an additional amount of about $91,000, which represents the difference between the contract price and the total sums paid by the State to the contractor and surety on account of the contract. There is then in the hands of the State about $139,000 to which the surety claims the liens attached. As indicated above, the State contends that such liens attached only to $48,000, and the balance in its possession became forfeited to the State because of the contractor's default.

The present motion made by the State of New York to dismiss the complaint raises essentially the question of the court's jurisdiction to adjudicate the rights of the litigants in the funds held by the State or to direct the distribution thereof. It is urged in substance that

the State of New York has not waived its sovereign right of immunity, so that the action can be maintained in this court. Upon the argument it was urged that, if there were a substantial doubt as to the court's jurisdiction over the State of New York, the case should be remanded to the state court, in accordance with the prayer of the complaint. This would be a practical solution, especially since it is urged that the interest of the United States is more theoretical than practical, since the liens—the validity of which are yet to be established—exceed in amounts the funds held by the State of New York. The United States, however, has determined that as a matter of policy it should insist that the waiver of its immunity from suit in an action of this kind is conditioned upon its right to remove the action to the United States District Court for trial. 28 U.S.C.A. §§ 2410 and 1444. The litigants and the Court are, therefore, faced with the situation that, should the case be remanded, then the state court would have no jurisdiction over the United States; and, if the case is to be retained, the litigants must meet the contention that this court has no jurisdiction over the State of New York.

The situation so far as the parties who have a financial interest at stake is an unhappy one. The contentions of all parties have been exhaustively briefed, and it seems to be agreed that there is no judicial precedent which would be determinative of this controversy.

■■ The contention of the United States can be shortly decided. While the theory of sovereign immunity is discussed at length in the briefs, it can be disposed of generally by the statement, which is equally applicable both to the United States and the State of New York, that the sovereign is immune from suit, except as it consents to be sued, and it may condition such consent to a particular court or tribunal. U. S. v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; Department of Highways, State of La. v. U. S., 5 Cir., 204 F.2d 630.

■ 28 U.S.C.A. § 2410 waives the immunity of the United States in an action to foreclose a lien upon real or personal property, upon which the United States has or claims to have a lien. This waiver expressly permits the United States to be sued in a state court having jurisdiction of the subject matter. Such immunity, however, is granted under the condition prescribed in Section 1444, which gives the United States the unqualified option to remove such an action to the district court. It follows that the immunity waived is conditioned upon the right of removal, and should that right be withheld or thwarted, it would seem to follow that the immunity is withdrawn. It follows, therefore, that there is no basis upon which this court can remand the case over the objection of the United States.

Turning now to the contention of the State of New York that it is immune from suit in this court, the problem is approached with the understanding that its immunity is as complete as that of the United States, and this court may not assume that consent of the State to be sued in its courts, grants to it similar jurisdiction, especially in matters involving the State's revenues. Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121.

The Eleventh Amendment to the Constitution of the United States by its terms prohibits the exercise of jurisdiction here. We find, however, that the State of New York has waived its immunity in this type of action by the provisions of Sections 42 and 44, subd. 6, of the Lien Law of the State of New York. Section 42 provides that a public improvement lien may be enforced against the funds of the state in the same court, and in the same manner, as a mechanic's lien on real property. Section 44, subd. 6, provides that the State is a necessary party to the enforcement of such a lien. These sections have been construed to amount to a waiver of immunity on the part of the State. In fact, it is conceded by the State on this motion that the State may be sued in this action, but it is urged that the consent given is limited to an action in the state courts, and that this court is, therefore, without jurisdiction.

The problem then becomes one of determining the jurisdictional limits of the waiver, insofar as this court is concerned. Precedents involving the construction and application of statutes generally are not of great value. The rules generally applied are not in dispute.

Although not involving the question of jurisdiction of a United States District Court, the waiver in question has been examined by the New York Court of Appeals in Anderson v. John L. Hayes Construction Co., 243 N.Y. 140, 153 N.E. 28, 29. In the Court's opinion that case holds that the State may be sued in a lien foreclosure action " * * * in the ordinary courts of justice * * *." and that the waiver of the State is to be construed in the light of its evident purpose to afford a remedy to competing parties who are claimants to public improvement funds held by the State. A key to the construction and application of the State's waiver in the present jurisdictional impasse is afforded by the following quotation, taken from the Anderson case, 243 N.Y. at page 147, 153 N.E. at page 29. "The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced." This quotation is cited with approval in U. S. v. Aetna Surety Co., 338 U.S. 366 at page 383, 70 S.Ct. 207, 94 L.Ed. 171.

The State urges that the Anderson case is no longer a precedent since the Lien Law was amended the next year after its decision. Like the decision itself, the Amendments did not involve the jurisdictional question arising here. In any event they did not in any way nullify the language used in indicating the extent of the waiver granted.

■ The sections of the Lien Law under consideration are general in scope. The consent of the State to be sued is explicit. The remedy is to be enforced "in the same manner as a mechanic's lien on real property." It follows that the State may be made a party, and the remedy pursued as if the sovereign were an individual. If the United States were a party to an individual mechanic's lien foreclosure action, it could remove the action to a federal court, and such court would obtain jurisdiction. The language and purpose of the statute waiving the State's immunity, the rules of construction and practical considerations, all prompt the conclusion that this court has jurisdiction of the State of New York, and that the motion should be denied.

■ The other contentions of the moving party have not been overlooked. It is held that the court has jurisdiction to adjudicate concerning the fund held by the State. Hartford Accident & Indemnity Co. v. First National Bank & Trust Co., 281 App.Div. 607, 121 N.Y.S.2d 308

The motions are denied, and it is so ordered.

### On the Merits

This action may be described as one brought to enforce liens under a contract for a public improvement. Authority therefore is found in the New York State Lien Law, Section 42, and since the provisions of that law apply, this type of action is usually litigated in the state courts. The United States however invoked the provisions of 28 U.S.C.A. §§ 2410 and 1444 and removed the cause into this Court where the issues were tried.

The facts are not seriously in dispute and following state practice, the litigants submitted proposed findings and conclusions which, while perhaps are unnecessarily detailed, have been considered and as finally adopted are set out below. Same furnish a factual background which will not be repeated. The procedural history of the action will be briefly set forth.

This action was commenced in the Supreme Court of the State of New York, Albany County, on June 18, 1951, to foreclose the liens filed against a contract for a public improvement, and to recover upon the Payment Bond posted thereunder, the deficiencies arising upon said foreclosure. The case was subsequently removed to this Court by defendant

United States of America. Subsequently plaintiff and all defendant mechanic's lienors assigned their liens and the causes of action based thereon, to defendant Hartford Accident and Indemnity Company, by assignments filed November 14, 1952. By an amended pleading, said defendant pleaded said assignments and added a new cause of action to impress and enforce its equitable lien upon the available funds held by defendant State of New York under said contract by virtue of its subrogation rights.

By a third party summons and complaint served upon the above named third party defendants, defendant Hartford seeks to hold them liable, under a written indemnity agreement, for the losses sustained and incurred by it, by reason and in consequence of posting said Payment Bond.

All of the issues framed by all of the pleadings, came on for trial before this Court and all of the parties appeared by their respective counsel, except that defendant P. R. Matthews Co. Inc. and the third party defendants (other than Albert Weiss against whom the action was discontinued), defaulted in appearing at said trial.

### Findings of Fact

1. Defendants P. R. Matthews Co. Inc. (hereafter referred to as the Contractor) and defendant People of the State of New York, acting through the Department of Mental Hygiene (hereafter referred to as the State) entered into a contract for a public improvement (Ex. 1), dated November 17, 1949, No. 941, Specifications No. 12884, Project No. 7482, for Additional Power Plant Facilities, Power House Building No. 33, Hudson River State Hospital, Poughkeepsie, New York, at a price of $419,990 (subsequently adjusted to $423,708.07), under which contract the Contractor posted a Performance Bond and also a Payment Bond pursuant to § 137 of the New York State Finance Law, McKinney's Consol. Laws, c. 56, each dated November 17, 1949, in the penal sum of $419,990 upon which bonds defendant Hartford Accident and Indemnity Company (hereafter referred to as the Surety) became surety.

2. The Contractor proceeded with the work under said contract and prior to October 20, 1950, received seven progress payments under estimates duly approved and certified by the State. The Contractor also earned $48,000 certified by the State to be payable under Estimate No. 8 approved by the State on October 24, 1950, and such sum was not paid to him because certain liens were filed with the Comptroller against the contract and such sum is still held by the State subject to adjudication in reference to said sum in this action. No further moneys were earned by the Contractor under the contract.

3. After the contractor received from the State certificate No. 8 dated October 24, 1950, no further moneys were earned by the contractor under the contract.

4. In addition to the sum of $248,050 paid to the contractor as progress payments numbers 1 to 7 inclusive and the sum of $48,000 certified by the State on Certificate of Payment No. 8, the contractor Matthews had earned the sum of $25,734.59 which are held by the State as retained percentages pursuant to the provisions of State Finance Law, § 139, as a guarantee that he would complete the work called for by the contract in accordance with the terms and conditions thereof.

5. During the time that the contractor continued to perform the work under the contract and prior to October 24, 1950 the State issued to the contractor three orders on contract calling for additional work to be done by him in the amounts of $4,435.59, $949.10 and $1,026.38 respectively.

6. The contractor accepted these three orders on contract as above stated and approved them in writing.

7. The contractor never asked the State for an extension of time for completion of the contract as referred to in the General Conditions of the Contract, paragraphs 85, 86 and 87.

8. Eventually and pursuant to Article 26 of said contract, the State served a seven day notice (Ex. P) upon the Contractor, returnable August 15, 1951, and

did on August 15, 1951, serve notice (Ex. Q.) upon the Contractor that it declared the contract cancelled, a copy of which notice was served upon the Surety together with a demand (Ex. R) that the Surety complete the same.

9. On August 20, 1951, the Surety advised the State (Ex. 16) that it would so complete and requested an extension of the completion date under the contract. On August 23, 1951, the State advised the Surety (Ex. 17) that an appropriate extension would be granted upon completion. The Surety thereafter completed the contract and was ordered to, and did, make changes in the work for all of which it has been reimbursed by the State out of the unexpended contract funds in the hands of the State. No extension of time was requested or granted on account of such work changes.

10. The Surety continued the work required by the contract, completed same and issued its statement of cost of completion in the sum of $36,605.04, which was paid pursuant to certificate dated September 2, 1952.

11. The contract originally provided that the work thereunder be completed by January 1, 1951, and it, and Article 21 of the Specifications, further provided for liquidated damages for delayed completion, at the rate of $25 per day, but further provided, § 85, in substance that if the work is delayed for reasons beyond the control of the Contractor, or by acts of the State or by changes ordered in the work, the State would consider the causes for delays and grant an appropriate extension of the completion date. Accordingly the State notified the Surety on August 29, 1952, (Ex. 2) that it had considered all the causes for delay and that the date of completion of the contract was extended to September 15, 1952. Completion and acceptance of the contract was officially certified by the State on September 2, 1952.

12. Upon the trial, the State claimed damages under Article 21, paragraphs 84–88 of the contract for delayed completion of the contract and elected to claim them at the liquidated rate of $25 per day based on 610 days, in the total sum of $15,250. No oral testimony was offered by the State to support the claim. It rested its claim upon the provisions of the contract and specifications and the fact that the contract originally fixed January 1, 1951 as the completion date, whereas the contract was not officially accepted until September 2, 1952.

13. In addition to the proof of the extension granted by the State mentioned above, the Surety produced documentary evidence that the State ordered changes and extra work done under the contract, by five Orders on Contract, the last of which was approved by the State Architect on November 28, 1951, and by the State Comptroller on December 20, 1951, and further proof tending to show that the work was substantially completed by February 6, 1952, in that said proof shows that no payrolls were incurred for work done on the job site thereafter (Ex. 22) coupled with proof that the State inspected and approved the work in June or early July 1952.

14. The State has failed to establish by proof any damages sustained by it by reason or arising out of, the breach of the contract by the Contractor.

15. The financial status of the contract and the unexpended balance thereunder, is now as follows, which said balance is held by the State as a stakeholder free from any claims against it by the State, viz.:

| | | |
|---|---:|---:|
| Contract price | | $419,990.00 |
| Additions, Orders No. 1, 2, 3, 5, | $ 7,218.07 | |
| Deductions, Order No. 4 | 3,500.00 | 3,718.07 |
| Adjusted Contract Price | | $423,708.07 |
| Paid Contractor on Estimates 1–7 | $248,050.00 | |
| Paid Surety for Completion Costs | 36,605.04 | 284,655.04 |
| Unexpended Balance | | $139,053.03 |
| Consisting of: Amount certified as earned Oct. 24, 1950 under Estimate No. 8 | $ 48,000.00 | |
| Balance uncertified prior to default | 91,053.03 | $139,053.03 |

16. During the prosecution of the work prior to the default, the following defendants furnished and supplied to de-

fendant P. R. Matthews Co., Inc., labor and materials used in the prosecution of the work under the contract, concerning which they seasonably filed, refiled, and/or extended, notices of mechanic's liens (Ex. 4) which complied in all respects to the requirements of the New York Mechanic's Lien Law as to form, sufficiency and dates and places of filing. The time to file liens expired October 2, 1952, and this action was commenced and the lis pendens was filed seasonably herein on June 15, 1951, and all parties whose names appear on the lien docket were made parties to this action as provided by said statute, and appeared herein (Ex. 3).

17. The said liens were filed by said lienors on the following dates and were duly assigned to the Surety after the commencement of the action, by assignments filed on November 14, 1953. Due proof was made (Ex. 9) that the following amounts are now due and payable thereon, with interest from the dates of filing (Ex. 4) which interest has already been computed to December 31, 1953, viz.:

| Lienor | Lien Filed | Amount Due | Interest to 12-31-53 |
|---|---|---|---|
| 1. American Engineering Co. | 9/20/50 | $ 51,048.09 | $10,039.46 |
| 2. Murray Roth, d/b/a Atlas Metal Works | 3/6/51 | 11,804.60 | 1,995.35 |
| 3. The Bayer Co. | 7/20/51 | 2,000.00 | 293.55 |
| 4. Chicago Fire Brick Co. | 1/11/51 | 13,774.44 | 2,454.96 |
| 5. Drake Non Clinkering Furnace Block Co. Inc. | 3/5/51 | 24,567.81 | 4,284.47 |
| 6. Energy Control Co. Inc. | 3/28/51 | 135.64 | 19.07 |
| 7. Hagan Corp. | 10/17/50 | 11,168.30 | 2,147.18 |
| 8. Interstate Plumbing Supply Co. Inc. | 10/18/51 | 838.51 | 110.77 |
| 9. Johns-Manville Sales Corp. | 2/28/51 | 7,000.00 | 1,190.00 |
| 10. William J. Long | 6/25/51 | 1,600.00 | 241.33 |
| 11. Paul B. Huyette Co. Inc. | 4/9/51 | 415.73 | 67.97 |
| 12. The Permutit Co. | 9/10/51 | 4,534.00 | 765.54 |
| 13. The Whiton Machine Co. | 9/14/51 | 2,000.00 | 275.33 |
| 14. Thomas C. Vincent, Inc. & M. H. Detrich Co. | 2/9/51 | 49,446.44 | 8,573.65 |
| 15. Westinghouse Electric Corp. | 2/23/51 | 6,722.50 | 1,148.83 |
| | | $187,056.06 | $33,607.46 |

18. Defendant United States of America filed notices with the State Comptroller of tax liens (Ex. G) against the Contractor which complied in all respects with the applicable State and Federal Statutes as to form, sufficiency, and filing dates as follows:

| Date Filed | Amount of Lien |
|---|---|
| 1/17/51 | $21,926.62 |
| 3/12/51 | 2,698.97 |
| 9/20/51 | 2,770.83 |
| 11/21/51 | 138.80 |
| 1/28/52 | 1,393.44 |
| 7/10/52 | 504.81 |

19. Defendant Julius Klein loaned the Contractor $25,000 by check on October 31, 1950 secured by a promissory note dated October 31, 1950, payable on demand. As further security for the payment of said note the Contractor executed and delivered to said defendant an assignment in writing dated October 31, 1950 in evidence as Exhibit B. That assignment was mailed to the Department of Public Works on November 15, 1950 (Ex. A) and was returned to the State Comptroller on November 21, 1950 (Ex. C) because it did not contain the Trust Covenant mentioned in Section 25 of the

Lien Law with the request that the assignment be corrected and refiled.

20. That check was deposited to the credit of the Contractor's account with the National City Bank of New York (Ex. J) on November 1, 1950, and on the same date at 3 P.M. the Contractor used that money as a deposit to support a bid interposed by the Contractor to the State (Ex. 5) in connection with a proposed contract advertised by the State for heating work, etc., at the Wassaic State School. The Contractor was not the lowest bidder and the deposit was accordingly returned by the State to the Contractor on November 3, 1950 (Ex. 6) and deposited to the credit of the Contractor's account with said bank on November 8, 1950 (Ex. J). All of that money was subsequently disbursed by the Contractor out of said account not later than November 17, 1950 (Ex. J) part of which was used to pay for labor and material used on the contract in suit (Ex. K).

21. That the defendant, Julius Klein, had no knowledge what the Contractor did with the moneys after the loan was made by said Julius Klein to the Contractor on October 31, 1950 as aforesaid.

22. On November 22, 1950, the Contractor executed and delivered to defendant Klein another assignment (Ex. E) containing said trust provision with a footnote that it was given to correct the October 31, 1950 assignment, which was filed with the proper State Departments within 20 days of its date on November 24, 1950 (Ex. 3).

23. That the $25,000 which the defendant Klein loaned to the Contractor on October 31, 1950 was advanced to the said Contractor secured by the assignment given by said Contractor to the defendant Klein on October 31, 1950 which was corrected by the assignment given on November 22, 1950, which latter corrected assignment was duly filed on November 24, 1950.

24. No advances were made under said assignment filed November 24, 1950, nor were any moneys loaned by defendant Klein to the Contractor after October 21, 1950, and said assignment was given to secure the said indebtedness created on October 31, 1950.

25. The second assignment filed November 24, 1950, containing the trust covenant to apply the proceeds of the loan to this contract, under pain of larceny, was not executed until several days after the entire moneys had been completely appropriated and disbursed by the Contractor (Ex. J), as found above.

26. It is found that no moneys were loaned or advances made by defendant Klein to the Contractor, subsequent to October 31, 1950 upon the assignment filed November 24, 1950.

27. Concerning the Performance Bond in suit, it is found that the Surety completed the contract to the satisfaction of the State. It has also performed its engagements under the Payment Bond, by paying all claims for labor and material furnished and supplied to the Contractor under the contract.

28. Concerning the third party summons and complaint of the Surety, it is based on a written agreement (Ex. 13) indemnifying the Surety against all loss, damage and expense, including counsel fees, sustained or incurred by reason or in consequence of posting bonds on behalf of the Contractor, including the bonds in suit. The case was discontinued as to Albert Weiss and the answer of the remaining defendants admits, by failure to deny, the execution and delivery of the indemnity agreement and they defaulted in appearing upon the trial.

From the documentary proof (Ex. 14) and uncontradicted testimony adduced at the trial by the Surety, it is found as a fact that the Surety sustained losses in discharging its liability to the lienors, exclusive of loss expense and counsel fees in the sum of $168,390.51 plus interest from the dates when said payments were made. Said interest has already been computed to December 31, 1953 in the sum of $14,845.38.

29. Concerning jurisdictional questions raised by the State it is found as a fact that plaintiff Thomas Vincent, Inc. and also defendant Hartford Accident and Indemnity Company, its assignee,

are nonresidents of the State of New York, being corporations organized under the laws of Connecticut.

The funds in suit being in the hands of the State as a stakeholder, it is also found as a fact that its fiscal status, its revenues, property, or its activities as a political entity, are not involved in this action to impress and enforce liens against said funds.

### Discussion

The problems raised here are essentially legal. They arise by reason of the claims made by the litigants which will be discussed below.

The United States in effect urges its tax liens should receive a priority in payment or at least be treated on a parity with the mechanic's and materialmen's liens. No precedents are cited to uphold the above contentions. In fact the law seems to reject them. Cases could be cited which are applicable by analogy but the question seems to be squarely passed upon in United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 297 N.Y. 31, 74 N.E.2d 226, which discusses federal decisions and in effect holds that the government asserting a tax lien has the same status as the contractor-taxpayer whose interest is subordinate to lien creditors. Since such creditors assert valid liens here in excess of the available fund, the claim will be denied.

Defendant Klein claims the right to share pro rata with the lien creditors by reason of the assignment of November 24, 1950. The validity of the claim depends entirely upon the statute which must be applied in light of the facts which are detailed in the findings made above.

Klein appears to base his claim upon the provisions of the Lien Law, § 25(2) and claims the status of a lienor who must be considered on a parity with other lienors. Lien Law, § 13(1). He must depend upon the instrument filed November 24, 1950, since the first assignment dated October 31, 1950 was never in fact filed, Lien Law, § 16, and was fatally defective in that it did not contain the covenant required by Sec. 25(5). Amiesite Cont. Corporation v. Luciano Contracting Co., 284 N.Y. 223 at page 227, 30 N.E.2d 483; Lanna v. Gates Inc., 142 Misc. 171, 254 N.Y.S. 97. Turning then to the assignment of November 24, 1950, we find that on its face it recites that the indebtedness secured, was contracted on October 31, 1950 and that the instrument did not contemplate either a present or future advance of moneys to be used in the prosecution of the contract. No doubt it was a purpose of the Legislature in enacting the provisions of the Lien Law relative to assignments, to afford a means whereby a contractor could obtain necessary working capital. Here, however, the instrument accomplished no such purpose. It further secured a past indebtedness already secured by a promissory note and the common law assignment of October 31, 1950. The Court attaches no importance to the fact that the assignment recites, that it is given to correct the previous instrument above referred to, which had no vitality as a statutory assignment since it was not filed. Lien Law, § 16. The attempt to revitalize same runs squarely into the provision that such assignments are not authorized to secure a past indebtedness. Lanna v. Gates, Inc., supra, 142 Misc. at page 174, 254 N.Y.S. 97.

The decision in Lee v. William Bailey Corp., 267 N.Y. 161, 196 N.E. 9, seems to foreclose the assignee's claim here. The following quotation taken from the opinion, 267 N.Y. at page 165, 196 N.E. at page 11, is appropriate.

> "In terms, section 25 of the Lien Law applies only to 'advances' made upon an assignment. A prior indebtedness secured by an assignment is not an advance upon an assignment."

That a part of the original indebtedness eventually found its way into the work required by the contract does not change the result. Scarsdale Nat. Bank & Trust Co. v. United States Fidelity & Guaranty Co., 264 N.Y. 159 at page

163, 190 N.E. 330. Equitable considerations are not available since the relief sought is based only in the statute.

This defendant relies upon Arrow Iron Works v. Greene, 260 N.Y. 330, 183 N.E. 515. That case was decided however when the law placed no limitation upon the effectiveness of assignments in so far as the time of the advancements were concerned. It is understood that the law was amended in 1930, see Lee v. Bailey, supra, 267 N.Y. at pages 164–165, 196 N.E. 9, and in Sec. 25(1) and (2) the effectiveness of assignments was declared limited to the amount of advance actually made thereon. As above stated there were no advancements made upon the assignment here.

On its face it is difficult to reconcile the decision in Lackawanna Steel Const. Corp. v. P. J. Greenough Engineering Co., 150 Misc. 147, 268 N.Y. S. 505, affirmed 266 N.Y. 594, 195 N.E. 215, with the holding in Lee v. Bailey Corp., supra. In any event the Lee case is later in point of time and this Court is bound thereby. Further in the Lackawanna case the matter of priority of the assignment under Sec. 25(1) was the issue litigated and the application of subdiv. (2) seemed not to be in dispute. The court there held that a past indebtedness would not support the priority of the assignment under Sec. 25(1). Advances actually made upon the assignment is the basis of parity under subdiv. (2). If past indebtedness is ineffective to invoke priority it would seem also to be ineffective to invoke parity.

The decision here is that Klein holds only a common law assignment which must be subordinate in payment to the liens filed.

The State of New York raises certain questions which will also be discussed.

It is asserted that this Court has no jurisdiction since the State has not consented to be sued in this Court. The same question was raised by a motion to dismiss which was denied in an opinion filed April 13, 1954, familiarity with same will be assumed.

The State next asserts that the fund in the hands of the State, which represents the balance of the contract price unearned by the Contractor due to his default is forfeited and this Court may not adjudicate in regard thereto. This contention involves the interpretation and application of certain sections of the Lien Law. It seems to be conceded that the question has been decided adversely to the State in Hartford Accident & Indem. Co. v. First National Bank & Trust Co., 281 App.Div. 607, 121 N.Y.S. 2d 308, affirmed by the New York Court of Appeals May 20, 1954, 307 N.Y. 634, 120 N.E.2d 833. A motion to reargue that decision has been made but this Court will follow the law as it now stands and no further comment on this contention is necessary.

The State further contends that under the terms of the contract it is entitled to damages for delayed completion of the contract at the rate of $25 per day for the period from January 1, 1951 (which was the completion date set out in the contract) to September 2, 1952 when the work was finally accepted. This contention is based upon the provisions of the contract which provide for liquidated damages of $25 per day in the event of a delay in completion beyond the date fixed in the contract.

The claim seems to be an afterthought. At the time of the trial it was first asserted that a claim for damages consisting of extra expense, such as engineering costs, was made. No proof was offered and it is based upon the provisions of the contract alone.

No authorities are cited which support the claim made and claimant relies upon language found in Hartford Accident & Indem. Co. v. First National Bank & Trust Co., supra. There is no question that damages may result from a breach of contract, which is all that the above case holds.

It is sufficient for this decision that the State under the provisions of the

contract extended " * * * the contract date of completion to September 15, 1952 in order to compensate for delays beyond your control * * * ". The provisions of the contract authorize such action, the State's claim would make same without effect. It is urged that the extension was given to the Surety rather than to the Contractor, which is correct, but it is the contract which is extended for all parties interested. The State recognizes the contract for the purpose of a recovery of damages, it may not repudiate its own voluntary modification thereof. The claim of damages is dismissed.

### Conclusions

1. This Court has full jurisdiction over the subject matter of this action and over all of the parties to it.

2. The contract in suit was completed to the satisfaction of the State within the date of completion fixed by it. It having proved no claims for damages arising out of the breach thereof by the Contractor, there is now in its hands as a stakeholder, the sum of $139,053.03 subject to distribution among the other parties to this action according to their respective rights.

3. All of the statutory requirements of the New York Lien Law concerning an action to foreclose mechanic's liens have been complied with and said action was seasonably brought.

4. Defendant United States of America holds a claim as a tax collector against, and as such stands in the shoes of, the Contractor as a taxpayer. The tax liens filed by it are subject and subordinate to the mechanic's liens filed herein and to the equitable lien of the Surety which lien dates back to November 17, 1949, the date of the bonds in suit. The funds in suit being insufficient to satisfy those liens in full, the Contractor has no interest in the fund to which the tax liens can attach, consequently the claim of the Government is disallowed and dismissed.

5. The assignment filed by defendant Klein on November 24, 1950, having been given to secure a past indebtedness and no advances having been made upon said assignment, and there being no proof of probative value that the money was loaned for the purpose of the contract in suit, said assignment cannot be treated as a lien within the meaning of Section 25 of the New York Lien Law, and it is subject and subordinate to said liens held by the Surety.

6. Said assignment, however, is valid against the Contractor as a common law assignment upon which said defendant is entitled to judgment against the Contractor for $25,000 with interest from October 31, 1950 and costs.

7. Said Surety, as assignee of the liens, is entitled to recover all moneys due the Contractor by the State, to the exclusion of all other parties to this action.

8. The Surety having performed all the conditions of the Performance and Payment Bonds exacted by the State, and made good all the defaults of its principal in failing to complete the contract and to pay for the labor and material used in the prosecution of the work under said contract as in said contract and bonds provided, it thereby became subrogated as of November 17, 1949 (the date of its bonds) to all the rights of the State in and to the contract moneys on hand and has an equitable lien thereon, enforceable in this action.

9. The aggregate of the claims of the Surety amount to $220,663.52, plus interest on $187,056.06 from December 31, 1953. That being in excess of the fund in suit, the Surety is entitled to judgment against the State of New York in the sum of $139,053.03 without interest or cost.

10. The Surety is also entitled to judgment against the third party defendants (except Albert Weiss) in the sum of $183,235.95 plus interest on $168,390.57 from December 31, 1953 together with costs, less the amount of $139,053.03 recoverable by it against the State of New York in this action.

Judgment in conformity with the foregoing, unless agreed upon, is directed to be settled on five days notice.

On Motion for Rehearing

In effect the United States urges that this Court overlooked or misapplied the pertinent law in its decision of Sept. 2, 1954. Argument was heard and briefs were submitted.

The argument proceeds upon the mistaken premise that the disputed fund was owned or under the control of the taxpayer and that recent decisions of the Supreme Court should be construed and applied as overruling previous decisions which are admittedly contrary to the government's contention. After consideration, this Court concludes that the prior decision herein will be adhered to and it is

So ordered.