### In re PELHAM FENCE COMPANY, INC., Debtor.

**Bankruptcy No. 85 B 20295.**

United States Bankruptcy Court, S.D. New York.

Aug. 13, 1990.

See also, Bkrtcy., 65 B.R. 924.

---

Barr & Rosenbaum, Spring Valley, N.Y., for Highway Safety Design and Fabrication Corp.

Dow, Lohnes & Albertson, New York City, for the Liquidator of American Druggists Ins. Co.

Ross & Cohen, New York City, for Welsbach Elec. Corp.

Erwin Goldman, trustee, New York City, for debtor.

## DECISION ON MOTION TO COMPEL TURN OVER OF FUNDS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This proceeding which seeks a turn over, pursuant to 11 U.S.C. § 725, of certain trust funds currently held by the trustee was brought by Highway Safety Design and Fabrication Corporation ("Highway"), a creditor with a valid, perfected, public improvement mechanic's lien as to the funds. These trust funds arose from a public improvement contract entered into between the debtor, Pelham Fence Company, Inc. ("Pelham") and the New York State Department of Transportation for the reconstruction of a portion of the Grand Central Parkway in Queens, New York (the "Contract"). Welsbach Electric Corporation ("Welsbach") also seeks a turn over of these trust funds by virtue of its valid, perfected, public improvement mechanic's lien. The last claimant to these trust funds is the liquidator of American Druggists Insurance Company (the "ADIC") whose claim is based upon an assignment by Pelham of all monies due under the Contract (the "Assignment").

### FACTS

The parties are in agreement as to the facts surrounding their various claims and have submitted a Stipulation of Facts to this court which are set forth as follows:

1. On June 13, 1985 (the "Filing Date"), Pelham Fence Company, Inc. ("Pelham") filed a petition under chapter 11 of the Bankruptcy Code. On or about May 6, 1986, the chapter 11 case was converted to a case under Chapter 7 of (sic) Bankruptcy Code.

2. The Trustee has been appointed as chapter 7 trustee for Pelham and has qualified and is acting as such.

3. Prior to the Filing Date, Pelham entered into a contract (No. D250430) with the New York State Department of Transportation ("DOT") for the improvement of the Grand Central Parkway (the "Contract"). The Contract was a "contract for

a public improvement" within the meaning of the New York State Lien Law.

4. American Druggists Insurance Company ("ADIC") is an insurance company organized under the laws of the State of Ohio. ADIC is currently in liquidation under the supervision of the Liquidator.

5. ADIC, acting as surety, issued a Labor and Material Bond, dated March 21, 1983, in connection with the Contract in the amount of $917,422.88 (the "Bond").

6. Highway is a corporation organized under the laws of the State of Connecticut. Highway supplied materials to Pelham in connection with the Contract.

7. Welsbach is a corporation organized under the laws of the State of New York. Welsbach supplied labor and materials to Pelham in connection with the Contract.

8. On July 10, 1984, Transpo Industries, Inc. ("Transpo") filed with the Comptroller of the State of New York ("Comptroller") and the DOT a notice of lien against the Contract in the amount of $10,496.

9. On August 16, 1984, Bennett Bolt Works, Inc. ("Bennett") filed with the Comptroller and the DOT a notice of lien against the Contract in the amount of $5,363.02.

10. On August 31, 1984, ADIC filed with the Comptroller and the DOT an assignment (the "Assignment") by Pelham to ADIC of all monies due or to become due under the Contract.

11. On or about September 24, 1984, ADIC paid $10,496 to Transpo and $5,363.02 to Bennett in full satisfaction of their respective claims. Transpo and Bennett thereupon filed satisfactions of their respective liens with the Comptroller on September 25, 1984 and September 27, 1984 respectively.

12. On or about September 25, 1984 Bennett and Transpo each executed a Release and Assignment of their respective claims in favor of ADIC. Neither of these releases were filed with the Comptroller as required under Section 14 of the New York Lien Law.

13. On October 29, 1984, Highway filed with the Comptroller and the DOT a notice of lien against the Contract in the amount of $47,143.75. On or about January 22, 1985, Highway commenced an action to foreclose this lien in the Supreme Court, Queens County, and on February 26, 1985 a notice of pendency of such action was filed with the Comptroller and the DOT. This action was subsequently removed to the United States District Court for the Eastern District of New York.

14. On January 22, 1985, Jet Asphalt Corp. ("Jet") filed with the Comptroller and the DOT a notice of lien against the Contract in the amount of $23,279.12. Jet's lien was renewed for a one year period pursuant to an order of the Supreme Court of New York filed with the DOT on July 19, 1985. Jet's lien was never renewed thereafter.

15. On January 29, 1985, Welsbach Electric Corp. filed with the Comptroller and the DOT a notice of lien against the Contract in the amount of $49,713.23. Welsbach's lien was renewed for successive one year periods pursuant to orders of the Supreme Court of New York dated July 10, 1985, July 1, 1986, June 11, 1987, January 13, 1988, and June 5, 1989. Each of these orders was filed with the Comptroller and the DOT.

16. On or about July 9, 1985, ADIC paid Jet the sum of $22,000.00.

17. Pursuant to a Stipulation and Order dated October 14, 1987, which was confirmed by Order of the United States District Court for the Eastern District of New York (Hon. Reena Raggi) entered on April 6, 1988 (collectively the "Stipulation"), the Comptroller was directed to turn over to the Trustee all funds relating to the Contract, subject to all liens and claims.

18. On or about June 24, 1988, the Comptroller turned over to the Trustee the sum of $56,831.87, representing all unpaid funds relating to the Contract (the "Fund").

19. Pursuant to the Stipulation, the Trustee released Four Thousand Thirty Two Dollars and Forty Cents ($4,032.40) to the New York State Commissioner of Labor ("Commissioner") in accordance with

(sic) Commissioner's Order and Determination in a Prevailing Rate Case as well as an Order of the United States Bankruptcy Court in relation to the labor claim of George Stratton.

20. The only known claimants to the Fund are Welsbach, Highway and the Liquidator. All other lienholders have either had their liens satisfied or permitted their liens to lapse by operation of law prior to the execution of the Stipulation.

21. This Stipulation of Facts may be executed in counterparts.

## DISCUSSION

The relative rights of the three claimants to the trust funds are governed by New York Lien Law § 25(1), (2), (4) and (5) which provides as follows:

In an action to enforce a lien under a contract for a public improvement, or an assignment of moneys, or any part thereof, due or to become due under such contract, parties having liens and parties having assignments unless such assignments be set aside as diversions of trust assets as provided in article three-a of this chapter shall have priority as follows:

(1) Except as provided in section five an assignee of moneys, or any part thereof, due or to become due under a contract for public improvement, whose assignment is duly filed prior to the filing of a notice of lien or assignment of every other party to the action, shall have priority over those parties to the extent of *advances* made upon such assignment before the filing of the notice of lien or assignment next subsequent to his assignment, but as to advances made subsequent to a notice of lien or assignment filed and unsatisfied or not discharged such assignee for the purpose of determining his proportionate share of moneys available for distribution as provided in subdivision four of this section shall be treated as a lienor having a lien to the extent of advances so made (emphasis added).

(2) An assignee of moneys or any part thereof, due or to become due under a contract for a public improvement whose assignment is duly filed subsequent to the filing of the notice of lien or assignment of any other party shall for the purpose of determining his proportionate share of moneys available for distribution, as provided in subdivision four of this section be treated as a lienor having a lien to the extent of advances actually made upon such assignment prior to the filing thereof.

(4) There shall be no priority among labor lienors, as a class or among other lienors as a class, and any moneys available for distribution among lienors of any class shall be distributed pro rata in accordance with their respective valid liens.

(5) Every assignment of moneys, or any part thereof, due of to become due under a contract for a public improvement *shall* contain a covenant by the assignor that he will receive any moneys advanced thereunder by the assignee and will hold the right to receive such moneys as a trust fund to be first applied to the payment of trust claims as defined in section seventy-one of the lien law, and that he will apply the same to such payments only, before using any part of the moneys for any other purpose (emphasis added).

ADIC asserts that New York Lien Law § 25(1), gives it priority over the Highway and Welsbach liens to the extent of $15,859.02 because such sums were advancements made to Transpo Industries, Inc. and Bennett Bolt Works, Inc. under the Assignment granted by Pelham prior to the filing of the notices of liens filed by Highway and Welsbach. Furthermore, ADIC maintains that it is entitled to share on a *pro rata* basis in the remainder of the fund by virtue of the fact that it paid another materialman lienor, Jet Asphalt Corporation, the sum $22,000.00 in satisfaction of Jet's lien subsequent to the filing of the Highway and Welsbach liens.

■ Although the Assignment was timely filed by ADIC in accordance with New

York Lien Law § 16 [1], it failed to satisfy the mandatory language of subsection (5) of § 25 of the New York Lien Law because it did not contain a covenant by Pelham that it would receive any moneys advanced under the assignment by ADIC and hold the right to receive such moneys as a trust fund to be first applied to the payment of trust fund claims. The failure by ADIC to include such a covenant is a fatal defect which renders the Assignment invalid. *See Vincent v. P.R. Matthews Co.*, 126 F.Supp. 102 (N.D.N.Y.1954); *Amiesite Const. Corp. v. Luciano Contracting & Building Co.*, 284 N.Y. 223, 30 N.E.2d 483 (1940).

■ However, even if ADIC had fulfilled the requirement of New York Lien Law § 25(5), they would be unable to satisfy the requirements of New York Lien Law § 25(1) because they did not make any advancements to Pelham upon the Assignment. Rather, ADIC satisfied three mechanics' liens which were filed against the property for work performed prior to the filing of the Assignment. ADIC did not make any advancements in furtherance of the Project, instead it satisfied its own liability under the Labor and Material Surety Bond dated March 21, 1983.

This case is similar to the case of *Vincent v. P.R. Matthews Co.* in which the court observed that a loan given by a lender on October 31, 1950 followed by an assignment from the contractor to the lendor on November 24, 1950 was not an advancement made upon such assignment as set forth in New York Lien Law § 25(1) and (2). *Vincent v. P.R. Matthews Co.*, 126 F.Supp. at 110–11. In so observing, the court noted that "[n]o doubt it was a purpose of the Legislature in enacting the provisions of the Lien Law relative to assignments, to afford a means whereby a contractor could obtain necessary working capital. Here, however, the instrument accomplished no such purpose. It further

secured a past indebtedness already secured ..." *Id.* at 111.

As in the *Vincent* case, there were no funds advanced by ADIC which would provide the contractor with working capital. In no way could the Legislature have intended New York Lien Law § 25 to be used as a means for a surety to recover payments made pursuant to their preexisting liability under a surety bond to the detriment of mechanics' lienors who have valid, perfected liens. Therefore, ADIC is not entitled to priority or to collect *pro rata* with Highway and Welsbach.

On the other hand, Highway and Welsbach have perfected, valid, mechanics' liens which are entitled to be satisfied in accordance with New York Lien Law § 25(4). Since there have been no other claimants and there are no other valid lienors, Highway and Welsbach shall share the Fund *pro rata* between themselves.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(E).

2. ADIC is not entitled to priority or to collect *pro rata* in the funds with Highway and Welsbach because they failed to comply with the mandatory requirements of New York Lien Law § 25(5).

3. Furthermore, ADIC did not make any advances upon the Assignment which would entitle it to collect under New York Lien Law § 25(1) and (2).

4. Highway and Welsbach have valid, perfected liens in the amounts of $47,143.75 and $49,713.33 respectively.

5. In accordance with New York Lien Law § 25(4), Highway and Welsbach are to

---

1. New York Lien Law § 16 provides that
   No assignment of a contract for the performance of labor or the furnishings of materials for a public improvement, or of the money, or any part thereof, due, or to become due, therefor, ... shall be valid unless such assignment or order, or a copy thereof, be filed

within twenty days after the date of such assignment of contract, or such assignment of money, or such order, with the head of the department or bureau having charge of such construction or demolition, and with the financial officer of the public corporation ...

share *pro rata* in the $52,799.47 Fund currently held by the trustee.

SETTLE ORDER ON NOTICE.